| | |
|---|---|
| 69 | 197 |
| 106 | 222 |
| 106 | 229 |
| 106 | 270 |
| 69 | 197 |
| 117 | 681 |
| 69 | 197 |
| 66a | 306 |

THE STATE v. MAGUIRE, *Appellant.*

1. **Criminal Law**: SELF DEFENSE. The plea of self defense is not available by one who, himself, brings on an affray, or who prepares himself for an encounter in which he intends to wreak his malice.

2. **Evidence**: DEFENDANT IN HIS OWN BEHALF: INSTRUCTIONS. Where a prisoner testifies on a trial in his own behalf, the jury may be properly instructed to consider this fact in determining the credit to be given to his testimony.

3. **Continuance**: REQUISITES OF AFFIDAVIT. A defendant who has on his own application obtained a continuance from one term to another, must state in his affidavit for a further continuance, the names of his witnesses and the facts which they are expected to prove. Wag. Stat., §§ 6, 8, pp. 1039, 1040. An application which has been refused is not an "application" within the meaning of these sections.

4. ———: DISCRETION OF TRIAL COURT. The discretionary power of

the circuit court to grant a continuance will only be reviewed where it is manifestly abused.

*Appeal from Cole Circuit Court.*—HON. GEO. W. MILLER, Judge.

*H. B. Hamilton* and *N. Kouns* for appellant.

*J. L. Smith,* Attorney-General, for the State.

HENRY, J.—At the December term, 1878, of the Cole circuit court, the defendant was indicted for the murder of Charles Brown. On the 3rd day of December, 1878, he filed an application for continuance, which the court overruled, and set the case for trial on the 2nd day of January, 1879. On the 2nd day of January, and during the same December term at which he was indicted, the cause was called for trial, and defendant again applied for a continuance, which the court refused, and defendant was put upon his trial, which resulted in his conviction of murder in the first degree. From that judgment he has prosecuted this appeal.

The following is the affidavit for a continuance, filed on the 2nd day of January, 1879:

"The State of Missouri, plaintiff, v. John Maguire, defendant.

"Now, at this day, comes the defendant in the above cause, and moves the court to continue this cause until the next term of this court, and the said defendant, on his oath, states that he cannot safely go to trial at this term of the court on account of the absence of material evidence in his behalf; that he was indicted at this term of this court, and said indictment was returned on the 1st day of said term, and on the 3rd day of December, 1878; that on the 3rd day of said term of court, and on the 5th day of December, 1878, this defendant filed his application for a continuance, which said application was, on the 6th day of December, 1878, by the court, overruled, and said cause.

set down for trial on the 2nd day of January, 1879; that one Wm. Ware, Jr., and one Charles Harris are material witnesses for his defense; that this affiant and his attorneys were informed that said Wm. Ware, Jr., resided or was temporarily staying in Chariton county, Missouri, and that they were also informed that said Charles Harris was in St. Louis, Missouri, when last heard from, but as to the number of his residence or place of business they were unable to learn exactly; that the fact that said parties were material witnesses for the defendant, or as to what he could prove by them, was not known to him or to his attorneys at the time of making of the former application for a continuance; that from the time of his arrest he has been kept in close confinement, with no means to employ counsel, and not until after his indictment had he any counsel to defend him; that as soon as he learned of said witnesses, and what he could prove by them, which was one or two days after the former application for a continuance, he caused to be issued out of the clerk's office of this court, a subpœna for said Wm. Ware, Jr., and said Charles Harris; that said subpœna for said Ware was sent to the sheriff of Chariton county, Missouri, with instructions to serve the same at once, and that the attorney of affiant wrote to said sheriff, giving him all the information he could in relation to the whereabouts of said Ware; that the attorney of affiant also wrote to said Ware a letter, addressed to him at Salisbury, Missouri, where he learned said Ware was; that no letter has been received from said Ware or said sheriff; and that said sheriff, although repeatedly written to, has failed to answer or return said subpœna; that the subpœna issued for said Harris was sent to the sheriff of St. Louis county, and said sheriff has written to attorney of affiant that he has been unable to find said Harris; that said defendant has had no means to pay the fees of said witnesses, or to pay for serving subpœnas, or to pay for the necessary costs of taking the depositions of said witnesses, but that he expects to be able to secure the

attendance of said witnesses at the next term of this court if this cause is continued; that he expects to be able to prove, and will, as he is informed, prove by said Wm. Ware, Jr., that on the day of the killing of said Brown, said Brown had been following said defendant, and in a dangerous, violent and threatening manner, made the first assault upon the defendant at the time of the killing, and brought on the difficulty which resulted in his death; that one James Anderson is a material witness for the State against defendant, and said Anderson will swear, as affiant is informed, that on the day of the killing, and a few hours before, the defendant had threatened the life of said Brown, and that said Harris was present at the time said threats were alleged to have been made, and affiant states he will be able to prove by said Harris that no such threats were made against said deceased by defendant, as will be sworn to by said Anderson. Affiant states that there are no other witnesses present at this term of court, or known to defendant, by whom he can prove the facts he expects to prove by said absent witnesses; that said witnesses are not absent by the consent, connivance or procurement of the defendant; that this application is not made for vexation or delay, but that justice may be done; he, therefore, prays for the continuance of this cause till the next term of this court.

The court gave for the State the following instruction which is complained of: The jury are instructed that a 1. CRIMINAL LAW: person who brings on a difficulty cannot self-defense avail himself of the right of self-defense, in order to shield himself from the consequences of killing his adversary, however imminent the danger in which he may have found himself during the progress of the affray, and if in this case the jury believe from the evidence that the defendant prepared himself with a knife previous to the killing of deceased, and sought and brought on the encounter with said deceased, in order to wreak his malice, then there is no self-defense in the case.

Appellant's counsel insist that there was no evidence upon which to predicate the instruction. They have overlooked the testimony of Albert Shroer, who stated that he saw defendant about six o'clock, at the bridge on McCarty street. He complained that Brown did not give him money enough for his work, and said if he did not give him more he would "cut or kill him with this knife before night." "Maguire had the knife in his hand at this time."

Whether defendant or deceased sought and brought on the difficulty, was submitted to the jury; and, with deference to the counsel, we think there was evidence tending to prove that defendant provoked the difficulty, and positive evidence that he had a knife with which he said he would kill Brown, if he did not give him more money. The following instruction given by the court, was read to the jury and commented upon by the prosecuting attorney, but the court withdrew it from their consideration before the defendant's counsel opened their argument to the jury:

"The jury are instructed that the right of self-defense, to justify homicide, can only be exercised when there is reasonable cause on the part of the person attacked to apprehend a design on the part of the party attacking, either to commit a felony or to do some great personal injury, and that there is immediate danger of such design being accomplished, but such apprehension and fear must be such as would cause a reasonable man to act upon them. No mere words or threats to strike with his fist, not displaying or using a dangerous weapon, would be sufficient excuse or justification to take the life of the party so threatening and acting." We cannot see that defendant was prejudiced by the reading of that instruction, since it was promptly withdrawn from the jury by the court. We do not determine now whether the court might properly have given the instruction or not.

The last instruction complained of, which we deem it

necessary to consider, was the following : The jury are instructed that by the statutes of this State the defendant is a competent witness in his own behalf, but the fact that he is a witness testifying in his own behalf, may be considered by the jury in determining the credibility of his testimony.

2. EVIDENCE: defendant in his own behalf: instructions.

The instruction simply declares the law. The statute authorizing the accused, in criminal cases, to testify in his own behalf, provides that the fact that he is the person on trial "may be shown for the purpose of affecting his or her credibility." It certainly gives the jury, if properly composed, no information. And the legal proposition it asserts is incontrovertible. Reference is made by counsel to cases in California, Indiana, North Carolina and Illinois, in support of their view ; but those cases are not analogous, nor does the principle announced in either of them sustain the objections made to the instruction given in this case. In *People v. Rodundo*, 44 Cal. 538, the court gave no instruction as to the credibility of the accused, and of this he complained. The court remarked on this subject : "It is now claimed that the statute which authorizes defendants in criminal cases to become witnesses, requires the court to instruct the jury in reference to the credit to be given to their testimony, and that failure to do so in this case was error." "It has always been the province of the court to instruct the jury in the rules of law by which testimony is weighed and its credibility is tested. The rule does not, however, require the court, in every case, to explain to the jury how they are to consider and weigh the testimony." We think that case an authority against the doctrine contended for by appellant's counsel. In *Nelson v. Vorce*, 55 Ind. 455, the court instructed the jury that the evidence of parties to the action and of those related to them, as their sons and daughters, is not entitled to as much weight as the evidence of disinterested witnesses. That was an invasion of the province of the jury. The court determines when witnesses are competent, but the jury alone are to

determine their credibility, and it was not for the court to tell them that one witness was more worthy of credit than another. It does not follow, however, that the court may not "instruct them in the rules of law by which testimony is weighed and its credibility tested." In the case of *Mc-Rae v. Lawrence*, 75 N. C. 289, the court held that it was error, upon the trial of a cause, where there was conflicting evidence, to charge the jury that: "Both the witnesses are gentlemen and it is purely a matter of memory." None of these cases, it will be at once perceived, enunciates any principle condemnatory of the instruction we are considering. The court did not in that instruction tell the jury what credit should be given to the defendant as a witness, but only what circumstances it was proper for them to consider in determining the credit to be given by them to his testimony.

There was no impropriety in giving the instruction. A jury, composed of men of sufficient intelligence to sit upon a jury, need not be told that the fact that one is on trial for a crime may be considered by them in determining the credibility of his testimony.

We come now to the application for a continuance. It was his first application within the meaning of the act. 3. CONTINUANCE: His former application was refused—the requisites of affidavit. cause was not continued to another term, but postponed to another day in the same term. Wag. Stat., sec. 6, p. 1039, provides that: "Every court of record in which any suit is pending, may at any term, for good cause shown, continue such suit until the next term." Section 8, p. 1040, is as follows: "Whenever either party to an action shall make a second application for a continuance thereof, on account of the absence of a material witness, the affidavit shall set forth the name of the witness and the facts he is expected to prove, if the court require it.' The meaning of the two sections obviously is that if a party has once, on his application, had a continuance from one term to another term, and again applies for a continu-

ance, he shall give the names of the witnesses and state what he expects to prove by them. An application which is refused is not to be counted as an application under these sections.

The defendant should not have been required to disclose the names of his absent witnesses or what he expected to prove by them, but, if that had been properly required, we are at a loss to perceive any defect in the affidavit filed in support of his application. It discloses all possible diligence, gives the names of the witnesses, what they would testify to, where they resided, as defendant had been informed, the issuance of subpœnas promptly after the information was obtained by him, and sending the subpœnas to the sheriffs of the respective counties in which the witnesses resided. He states that after the homicide he was immediately arrested and lodged in jail; that he was without friends, acquaintances or money; that he had no means, therefore, of procuring counsel. The testimony of the absent witnesses, conceding that they would have testified as he states they would, was material to his defense. It is not for the trial court to say that the affidavit is false, and, therefore, refuse a continuance. It must, for the purpose of the continuance, be taken as true, and it is to be regretted that defendant's application was refused. So many judgments in cases of this character have been reversed by this court, within the past twelve months, that we feel a reluctance to add to the number, but, however the State and counties may suffer in the matter of criminal costs and the other evils incident to a tardy execution of the criminal law, it is our solemn duty to see that not only the State, but persons accused of crime, have a fair and impartial trial.

The Attorney-General objects to the affidavit, that the accused did not state therein that the facts which he alleged would be sworn to by the absent witnesses were true. He had pleaded " not guilty," and nothing in the act required him to swear in his affidavit to the truth of what the absent

witnesses would testify to. If, at his instance, there had already been several continuances of the cause, greater strictness might have been required in this respect.

The circuit court has a discretion in the matter, and nothing but its abuse will warrant this court in interfering with its exercise. When a party has had several continuances on his application and applies for another, the court may properly be more strict than on a first or second application, and any reasonable requirements made by the court, of the accused, in his affidavit for a continuance, will be sanctioned. This affidavit contained all that was necessary, and more than the law required, to entitle defendant to a continuance, and we are constrained to reverse the judgment. The *State v. Wood*, 68 Mo. 444, is decisive of this. Greater diligence was used by Maguire than by Wood.

*4. ——: discretion of trial court*

Judgment reversed and cause remanded. All the other judges concur.

REVERSED.