## THE STATE v. COOK, *Appellant*.

1. **Criminal Law :** PREJUDICE OF JUROR : FINDING OF TRIAL JUDGE. The finding of the trial judge on the question of the prejudice of a juror, when supported by evidence which it was his duty to weigh and consider, will not be disturbed by the appellate court.

2. —————: DEFENDANT TESTIFYING : INSTRUCTION. An instruction is proper which tells the jury that in determining what weight should be given the defendant's testimony, they *should* consider the fact that he is the party accused and on trial.

*Appeal from Washington Circuit Court.*—HON. JNO. L. THOMAS, Judge.

AFFIRMED.

No brief for appellant.

*D. H. McIntyre*, Attorney General, for respondent.

(1) The second instruction correctly defines murder

in the first degree to be a wilful, deliberate killing done with premeditation and malice aforethought. (2) The third instruction has often been sanctioned by this court. *State v. Talbott*, 73 Mo. 346, and cases cited. The technical terms used in the definition of murder in the first degree are defined as usual, except *deliberately*, which is defined as in the *State v. Wieners*, 66 Mo. 13. Even if this definition were wrong the error would be immaterial as there was no provocation whatever in the case. (3) Instruction numbered three with regard to the defence of insanity follows the uniform decisions of this court. *State v. Redemeier*, 71 Mo. 173; *State v. Erb*, 74 Mo. 199, and cases cited. And it correctly told the jury that drunkenness was no excuse for the crime. *State v. Dearing*, 65 Mo. 533; *State v. Edwards*, 71 Mo. 323. (4) The fourth instruction properly told the jury to consider defendant's interest in the suit in weighing his testimony. *State v. McGinnis*, 76 Mo. 326. (5) The fifth instruction is the usual one upon the subject of reasonable doubt, and the sixth is merely formal. The court properly confined the instructions to murder in the first degree and the defence of insanity. If the defendant was sane there could be no doubt as to the crime committed. (6) The court heard evidence upon the point that the juror, John Forester, had expressed an opinion adverse to defendant, which he failed to disclose on his *voir dire*, and found that the charge of prejudice against him was unfounded. This court will not disturb that finding. Where the impartiality of a jury is impeached, it is due to the juror and to the interest of public justice that he be confronted with the charge; and unless the evidence is plain against the juror the verdict should be allowed to stand. Thompson and Merriam on Juries, § 304, p. 346. *State v. Kingsbury*, 58 Me. 238. (7) The evidence must clearly preponderate against the juror. A mere doubt of his impartiality is not enough. *Davison v. People*, 90 Ill. 221; *State v. Dumphey*, 4 Minn. 438; *State v. Ayer*, 23 N. H. 301.

MARTIN, C.—The defendant was indicted and convicted of murder in the first degree for killing a woman named Emma Shore. It was developed in the evidence that the defendant, a negro man, raised in Washington county and reputed to be of a peaceable disposition, although frequently seen under the influence of liquor, had been acquainted for some considerable time with the deceased, a young girl of his own race, to whom his attentions had been latterly paid in the character of a suitor. Early in the afternoon of July 5, 1883, the defendant was seen by witness, Mahala Clark, who learned from him that he had just come from an interview with the deceased who at that time was residing at Mr. Wallace's, and that there had been a long talk between them, which had terminated in his disappointment and discomfiture. After detailing the result of his interview he added: "If that girl don't do me any good, she shall never do any other man any good." A short time after this conversation, possibly a short time before it, the defendant called at the residence of one Nathan Ennis, whose wife, Lucy, seems to have been an intimate friend of the deceased, and asked of Lucy Ennis whether or not the deceased would be there that night, remarking at the same time that he intended to come up. In answer to his inquiry, Lucy Ennis informed him that she did not know of her intention to be there. The defendant then left.

A short time after dark he returned and found her there. The evidence fails to disclose anything particular as happening between them. He stayed but a few moments, and then left, carrying away under his arm the hat of the deceased, seemingly in a playful manner, requesting Lucy Ennis not to inform the deceased of the fact. As soon as he left, the deceased along with Lucy Ennis, went over to the residence of witness, Margaret Johnson, which was within hearing distance from the house of Nathan Ennis. The defendant on leaving repaired to witness, Hulsey, from whom he borrowed an unloaded pistol, remarking that he expected to go with

the hack that night to Mineral Point, and might need a
pistol. After obtaining this pistol the deceased is next
seen by witness, Jennings, from whom he borrowed a
nickel, stating at the time that he wanted to buy beer
with it. After borrowing the nickel he exhibited the
pistol to Jennings, uttering at the time these words:
"Jim, dirt to-night—dirt to-night." Failing to obtain
cartridges at a drug store near by, he visited the store
of Mr. Murphy, and upon repeating his contemplated trip
with the hack to Mineral Point, he succeeded in buying
some. He then made his way back to the residence of
Nathan Ennis, where he had left the deceased. On re-
entering it he was told by Ennis that he supposed the
deceased had gone home. This statement was made in
answer to the defendant's inquiry for her. He then left
the hat which he had brought back and started off in the
direction of the deceased's home at Mr. Wallace's. Very
soon after he left loud talking was heard at the residence
of Margaret Johnson, whither the deceased with Lucy
Ennis had gone. Peter Casey and John Whitley went
over there from the Ennis house, attracted by the loud
talking. Casey entered the house and Whitley re-
mained at the door.

The defendant was there seen following the deceased
from room to room with a pistol protruding from his hip
pocket, stating that he wanted to speak to her, that he
wanted her to speak one word to him ; that he wanted her
to come to the door to speak one word ; that he wanted
her to bid him good-bye. This she told him she would
not do until he laid his pistol aside, a weapon she never
had seen him carry before. He answered that he could
not do as she requested, and that she would be sorry for
her conduct. During the interview he at one time pulled
out the pistol, but returned it to his pocket upon Lucy
Ennis' running between them. He had been ordered out
by Margaret Johnson. Finally Lucy Ennis, remarking
that she heard her child crying, started back towards her
residence, the deceased and Peter Casey accompanying

her. The defendant declared that he would go home with the deceased, and started in company with them. As the party was passing down the declivity which led from the house they were leaving, the defendant stumbled and came near falling. After recovering himself he placed his hand on the deceased's shoulder, and asked her to excuse him for what he had said and done at the house. To this she answered "no," assigning as a reason that she had already excused him too many times. He insisted again that she ought to excuse him, but she made no further reply.

On passing a branch, which extends through the hollow they were traversing, Lucy Ennis was a few steps in front and the defendant, the deceased, and Peter Casey were coming on abreast. After crossing the branch the defendant fell back a step or two behind the deceased and Peter Casey, and called out to Lucy Ennis asking where she was. Immediately after her answer indicating where she was, the defendant discharged his pistol at the head of the deceased, and she fell, declaring in her last words that the defendant had shot her. The defendant disappeared in the darkness and was heard running swiftly up the hollow. Another shot was heard a few minutes afterwards in the direction he had run; and according to witness, Magaret Harris, the defendant afterwards appeared at her house asking to be admitted and fired two shots on her porch, and left upon her refusal to admit him. The bullet entered the back of the deceased's head, passed inward and downward to the first bone of the spinal column, producing paralysis of the body, in which condition she lingered till her death on the 25th of August following.

At about 9 o'clock the next morning the defendant was discovered at the Teasdale farm, about half a mile from Potosi, lying among some bushes in a fence corner. Upon being informed that he had shot Emma Shore he said that he did not know it, adding that he had shot himself too. There was a knot on his forehead and some

wounds and blood on his face ; but the evidence fails to indicate any injuries to his person of a serious nature. He asked for a drink of water, and soon afterwards disappeared. On the 8th of July, the day of his arrest, he was seen by a witness at the farm of a Mr. Dawson, about three miles from Potosi, lying in a corn crib, between some hay and a log of the crib. He answered to his name and upon request of the witness placed his pistol within reach where it was taken. He did not seem to know where he was. The witness covered him with a piece of carpet and left him. A witness, John Flynn, testified that the defendant called at his residence early in the evening of the homicide while he was at supper, and wanted witness to buy him a suit of clothes, which he refused to do. The witness thought that defendant acted strangely but was satisfied that he was not at the time intoxicated. There was evidence tending to prove that defendant was intoxicated after the homicide when he called at a livery stable between 10 and 11 o'clock in the evening.

The defence consisted of the plea of insanity. One physician testified that in his opinion the defendant was insane, basing his conclusion chiefly upon the supposed attempt of the defendant to take his own life. Two physicians concurred in the opinion that he was perfectly sane. One of them attended him after his arrest, and the other one had known him from childhood. The defendant testified from the witness stand, and informed the jury that he had no recollection of any of the facts appearing in evidence against him ; that he did not know where he obtained the pistol or where he had been on the night of the homicide, and that he had no recollection of shooting himself or any one else.

In the motion to set the verdict aside it is alleged that Forester, one of the jurors, had expressed an opinion adverse to the defendant which he failed to disclose when examined on his *voir dire*. The court received evidence bearing upon this imputation. Dr. Tay-

lor testified that immediately after the homicide he was called in to attend to Forester's wife who was ill; that while there, Forester, in the presence of his wife and mother-in-law, expressed a willingness to go up and hang the defendant. This statement was positively contradicted by Forester under oath ; and his wife and mother-in-law, who were said to have been present, testified that no such declaration was made by him. Witness, Lancaster, testified that Forester had expressed in his hearing an intention of condemning the defendant, should he be called upon the jury. This declaration was also contradicted by Forester under oath. In corroboration of the juror, Mr. Evans, the prosecuting attorney, testified that after the jury was sworn said witness, Lancaster, called him to one side and asked him why he had accepted Forester as a juror, alleging as a reason for his inquiry that Forester had worked with defendant and for the defendant's attorney, and that he had told witness that if he was called to serve upon the jury he could not hang the defendant. Upon this evidence the court found that the charge of prejudice against the juror was not sustained. This finding being supported by evidence, which it was the duty of the trial judge to consider and weigh, cannot be disturbed in the appellate court.

I have examined the instructions carefully for the purpose of satisfying myself that the defendant has had a fair trial in compliance with proper enunciations of law governing the evidence submitted, and they seem to me to be such as have been often approved in the adjudications of this court. It has been objected that the fourth instruction wherein the court says to the jury : "That in determining what weight you give defendant's testimony, you should consider the fact that he is the party accused and on trial in this cause," constitutes material error calling for a reversal of the judgment. In the case of *State v. Maguire*, 69 Mo. 197, this court approved an instruction in the following language : "The jury are

instructed that by the statutes of this state the defendant is a competent witness in his own behalf, but the fact that he is a witness testifying in his own behalf, may be considered by the jury in determining the credibility of his testimony." In *State v. Zorn*, 71 Mo. 415, the following instruction was approved : "The defendant is competent to testify as a witness in this case, but the fact that he is the defendant may be shown for the purpose of affecting his credibility." In *State v. McGinnis*, 76 Mo. 326, an instruction reading as follows was approved : "That the defendant has a right to be a witness in his own behalf, yet, in weighing his evidence and the weight to be given thereto, they have a right to take into consideration the interest that he has at stake in this case."

It is objected that in the use of the word "should," instead of "may," in the instruction complained of, the court has exceeded the authority of the foregoing cases, and invaded the province of the jury. I fail to perceive any force in the distinction or weight in the objection. It is provided in our statutes of criminal procedure that no person shall be incompetent to testify as a witness, by reason of being the person on trial, or by reason of being the husband or wife of the accused, but that "any such fact may be shown *for the purpose of affecting the credibility of such witness*." It is, also, expressly provided that a refusal of the accused to testify shall not be commented upon or construed to his detriment. R. S., 1879, sections 1918, 1919. Under the common law, the fact that the witness was on trial in the case totally disqualified him from giving any evidence whatever. The ground of this disqualification included considerations of self-interest, which spring from the inherent weakness and fallibility of human nature, considerations which no constitution or laws could safely ignore. Neither are they ignored in our laws. They unquestionably regard the accused on trial as occupying an attitude materially different from that of all other

The State v. Cook.

witnesses in the case; in disabling the state from calling him as a witness, in giving him the privilege of testifying or not at his pleasure, in guarding him against injurious comments and reflections when he declines to make himself a witness; in protecting him from cross-examition in respect to matters about which he has not seen fit to testify, when he avails himself of the privilege of taking the witness stand, and in the cautioned credibility attributed to his testimony. If the attitude of the accused, when he takes the witness stand is in truth different from that of all other witnesses according to our laws, I am at a loss to perceive any error in the court so treating him, and in reminding the jury of such undoubted fact. This, I conceive, the court can do without subjecting itself to the criticism of singling out a witness in its instructions for the purpose of throwing distrust upon his testimony. There can be no such other witness as the accused. The fact of which the jury is thus reminded is one which they ought to consider; and I am free to say that in my judgment no jury could faithfully discharge its sworn duty who fails to do so.

The instructions approved in the foregoing cases constitute nothing more than a prudent reminder of this duty. It is upon no other construction they can be interpreted as having any point or meaning, for they assert in words merely that the jury is at liberty to consider a certain fact, which in its nature and tendency bears upon the credibility of the accused when testifying in his own behalf. Why should the court refer to this important and material fact, distinguishing the accused from all other witnesses, unless it intended that they should not overlook, but remember it in their deliberations? The instruction complained of in this case only performs the same office in language slightly changed. In other words, the object and import of the instructions heretofore approved by this court, will be found clearly expressed in the instruction complained of. It certainly does not, any more than the previous instructions, assume

to declare how the fact shall be considered whether favorably or unfavorably to the accused. It simply declares to them that they should consider it as bearing on the credibility of the accused. As it is a fact which in our laws, as well as in the nature of things, bears upon his credibility, I see no error in telling the jury that they should consider it thus, in its true tendency and light. The admonition to some juries and in some cases might be unnecessary and superfluous. But in no case can I conceive it to be erroneous. The instruction cannot in any sense be regarded as equivalent to a command to discredit the testimony of the accused, without doing violence to the obvious and customary meaning of the words in which it is expressed.

In the circumstances attending and surrounding the action of the defendant, all the essential ingredients and revolting incidents which constitute and usually distinguish the capital offence of which he has been convicted are painfully present, the motive, the premeditated malice, the deadly weapon, the felonious and cowardly assault, without provocation or excuse, the fall of the slain, and the flight of the slayer, assisted in his escape by the protecting shadow of night. He has had his vengeance and his day in court. The law has adjudged him his deserts ; and if he has any further claims for his life they ought to be preferred before another department of the state.

In my opinion the judgment should be affirmed. DeArmond, C., concurs, for reasons given in a separate opinion. Ewing, C., dissents, for reasons given in a separate opinion. Henry, C. J., and Sherwood, J., dissent.

DeArmond, C., Concurring.—I do not concur in the views expressed by my associate respecting instruction number four, given by the court of its own motion, and which is in the following words : " *That in determining*

*what weight you will give defendant's testimony you should consider the fact that he is the party accused and on trial in this cause."* This instruction is stronger in its terms than any of its class. yet approved by this court, but whether or not it is erroneous, for that reason, must depend upon a correct understanding of the statute and the decisions hereinafter considered. The law is found in section 1918, Revised Statutes, a portion of which is as follows: "No person shall be incompetent to testify as a witness in any criminal cause or prosecution by reason of being the person on trial or examination; or by reason of being the husband or wife of the accused, but any such facts may be shown for the purpose of affecting the credibility of such witness; provided that no person on trial or examination, nor wife or husband of such person, shall be required to testify, but any such person may, at the option of the defendant, testify in his own behalf, or on behalf of a co-defendant, and shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case."

It will be noticed that no express authority is here given the court to direct attention to the defendant's testimony, or to give any instruction respecting his credibility. It will be noticed, too, that the husband or wife of a defendant is liable, so far as the law goes, to the same tests, when testifying, as may be applied to the defendant, and that both the defendant and husband or wife of the defendant are privileged, and alike privileged, from cross-examination, except as to any matter referred to in chief. These witnesses may testify to as many or as few pertinent matters as to them shall seem advisable, and within the bounds they establish the cross-examination is confined. It should be noted further that the reference in the clause, "but any such facts may be shown for the purpose of affecting the credibility of such witness,"

must be primarily to the consort of the accused. The identity of the accused and the witness, when the same party is on trial, and also a witness testifying for himself, is, in ordinary proceedings, apparent. The fact that, one on trial for an offence has an interest in the result, is obvious. That his testimony is apt to be affected by that interest is but common experience. That the husband or wife is, also, an interested witness is plain, and that the testimony of such witness is liable to be tinged by considerations growing out of the relation between the witness and the accused is beyond dispute. But the fact of the relationship is to be established, in most cases, by proof, the evidence of it not otherwise appearing, as in the case of the defendant when he passes from the "box" to the witness chair, and thence to the prisoner's box again. The interest of a witness in the event of a suit in which he testifies may be shown independent of the statute.

It now remains for us to consider how this instruction will appear when compared with the instructions of like character approved by this court. In the case of *State v. Maguire*, 69 Mo. 197, this instruction was before the court: "*The jury are instructed that by the statutes of this state the defendant is a competent witness in his own behalf, but the fact that he is a witness testifying in his own behalf may be considered by the jury in determining the credibility of his testimony.*" In *State v. Zorn*, 71 Mo. 415, this instruction was approved: "*The defendant is competent to testify as a witness in this case, but the fact that he is the defendant may be shown for the purpose of affecting his credibility.*" An instruction in *State v. Sanders*, 76 Mo. 35, is almost in the language of the one in the *Zorn case, supra*. The instruction in *State v. McGinnis*, 76 Mo. 326, is in these words: "*That the defendant has a right to be a witness in his own behalf, yet in weighing his evidence and the weight to be given thereto, they have a*

*right to take into consideration the interest that he has
at stake in this case.*"

In the *Maguire case*, *supra*, Henry, J., delivering the
opinion of the court, after commenting on a number of
decisions of other courts, says: "There was no impro-
priety in giving the instruction. A jury composed of
men of sufficient intelligence to sit upon a jury, need
not be told that the fact that one is on trial for a crime
may be considered by them in determining the credi-
bility of his testimony." In the *Zorn case*, *supra*, this
is all that is said about the instruction there given:
"An instruction similar to this, and containing the same
principle, was expressly approved by this court in the
case of *The State v. Maguire*, 69 Mo. 197." Respecting
the instruction in *State v. Sanders*, *supra*, this only is
said: "This was clearly the law, and no error was com-
mitted in giving it to the jury." In the *McGinnis case*,
*supra*, this is all that is said about the instruction above
copied: "The fifth instruction was fully warranted
by the cases of *State v. Maguire*, 69 Mo. 197, and *State
v. Zorn*, 71 Mo. 415." In *State v. Cooper*, 71 Mo. 436,
defendant having complained of the court's refusal to
give a certain instruction asked by him, it is said:
"Number four, given for the state, was all that de-
fendant was entitled to on that subject. By it the jury
were told that they are the sole judges of the credibility
of witnesses, and in passing upon the credit to be given
to any witness (defendant included), they may take into
consideration the means of knowledge, the relation to
the transaction, and the interest of the witness." I quote
further from the same opinion: "In a criminal pro-
ceeding the defendant's *status* as a witness is the same
as that of a party to a civil suit, who becomes a witness
for himself." And: "The credit of a witness testifying
for himself in a criminal cause, is to be determined by the
jury, as in a civil suit, by the demeanor of the witness,
the character of his testimony, and the magnitude of his
interest in the event." In *State v. Banks*, 73 Mo. 592,

it is said: "But under our law, a defendant in a criminal cause is a competent witness, and his *status* when on the witness stand is the same as that of a party to a civil suit who becomes a witness for himself."

From this review it appears that in each of the instructions in any way resembling this, and approved, two ideas are conveyed to the jury ; first, that *the defendant is a competent witness ;* second, that the fact of his being the accused on trial, or his interest in the event of the suit, *may* be considered as affecting his credibility or the weight of his testimony. It also appears in the *Cooper case* that a general instruction on the credibility of witnesses, defendant included, renders unnecessary an instruction defining the defendant's *status* as a witness. We find, too, that the defendant, as a witness in a criminal case, submits his testimony to be weighed in the same scales that will be used if he were testifying in a civil suit wherein he is a party, his *status* is the same. Now I do not find that it is the *duty* of the trial court under this statute, or these decisions, to give any special instruction concerning the defendant's testimony. So far, no instruction directing attention to a defendant's interest, or credibility, or incredibility, has been approved by this court, except where, at the same time, in the same instruction, attention was also called to the fact of his competency to testify as a witness. Nor are any of these instructions directory. They are expressive as to the scrutiny of a defendant's testimony of permission. At most they are mildly suggestive and delicately cautionary.

*Should* is persuasive, its use imports an obligation. In the instruction under consideration there is nothing to soften the injunction, no declaration, as in the instructions I have copied from the reports, asserting or hinting at defendant's competency as a witness. If it be said that the fact of his being allowed to testify made that plain enough, I may, with the learned judge who delivered the opinion in the *Maguire case, supra,* say

that any one competent to sit upon a jury need not be told that the fact of the witness being the defendant on trial might be considered in determining the weight of his testimony. The court did not in any of these cases from which I have quoted do more than approve the instructions as not erroneous. They are not viewed as necessary instructions. If the instruction under consideration is not erroneous, then it would follow logically, I think, that there would be no error in advancing a step farther by substituting *must* for *should*. That the natural effect of this instruction, disconnected as it is, and expressing but one thought, was to cast suspicion upon the defendant's testimony can hardly be doubted. It is doubly objectionable in being the only instruction given on the credibility of witnesses, or weight of evidence, although as many as a dozen witnesses testified on the trial. *State v. Underwood*, 75 Mo. 230.

The statute (section 1920) forbids comment by the court upon the evidence. *State v. Bell*, 70 Mo. 633. What comment could be more sly or effective than that embodied in a *declaration of law*, which singles out one of a dozen witnesses, and says, you *should* consider anything, I care not what, as affecting the credibility of this witness. The only law embraced in section 1918, having a peculiar application to the defendant, or to the husband or wife of the defendant, on which it might be important to instruct a jury, is that which limits the cross-examination of such witnesses to matters referred to on the examination in chief. On general principles, under the statute, and by authority of the decisions herein reviewed, I conclude that this instruction, number four, is erroneous.

But was the testimony of the defendant, upon which this instruction cast suspicion, of such character that he could be prejudiced by this error of the court? He testified, substantially, that he had no recollection of the

alleged shooting, or of having been at any of the places, Flynn's saloon excepted, where the state's witnesses said he was the night of July 5th; or of getting or having a pistol that night; or of having shot himself, or when or where or how he was shot. His first recollection after this blank was of witness, Jennings, coming and calling him about nine or ten o'clock the next morning. That he then found himself lying in a thicket some distance from the scene of the tragedy. That his head was bloody and hurting him fearfully, and he could not imagine what was the matter with it. That he didn't know he had a pistol till Jennings called his attention to it, when it was found to be in his pocket. This testimony does not contradict or tend to contradict anything introduced by the state; it simply amounts to a denial of all recollection of the events of that fatal July night. Nor could it under the law, as declared by this court, support the plea of insanity. *State v. Ward*, 74 Mo. 253. So, although it was error to give this instruction, yet the error is in this case harmless. I concur with Martin, C., in the result, but think instruction number four should be condemned.

HENRY, C. J., CONCURRING.—This concurring report of Commissioner DeArmond I adopt as my concurring opinion in this case. Judge Sherwood concurs in this opinion.