THE STATE v. MORRISON, *Appellant.*

DIVISION TWO.

1. **Criminal Law:** NEGLIGENT SHOOTING : MANSLAUGHTER. Where one carelessly handles a loaded shotgun, and without examining to see whether it is loaded, points it at another, and unintentionally, but negligently, and with a recklessness incompatible with a proper regard for human life, shoots him, he is guilty of manslaughter in the fourth degree.

2. **Criminal Practice:** DEFENDANT AS WITNESS : INSTRUCTION. Where on a trial for murder defendant has testified in his own behalf, it is not error to instruct the jury that they *should* consider the fact in weighing the evidence, that defendant is the prisoner on trial.

*Appeal from Greene Circuit Court.*—HON. W. D. HUBBARD, Judge.

AFFIRMED.

*Goode & Cravens* for appellant.

(1) The court erred in giving instructions based on the theory of either murder in the first or second degrees. (2) The court erred in giving instructions, numbered 6, 8 and 9 for the state. (3) This case is easily distinguishable from *State v. Emery,* 78 Mo. 77, and cases cited in that case.

*John. M. Wood,* Attorney General, for the State.

(1) As defendant was only convicted of manslaughter, instructions as to murder will not be reviewed by this court. *State v. Wilson,* 98 Mo. 440. (2) The instructions of the court correctly declared the law as to manslaughter in the fourth degree, resulting from the unintentional killing of a human being by the act, procurement and culpable negligence of another. *State v.*

*Emery*, 78 Mo. 77. ( 3 ) An instruction as to the cred-
ibility of the witnesses, the same as instruction, num-
bered 7, given by the court on the part of the state in
this case, was approved in the case of *State v. McGee*,
85 Mo. 647. ( 4 ) The eighth instruction as to the cred-
ibility of defendant's testimony is correct. *State v.
Cook*, 84 Mo. 40. ( 5 ) The ninth, as to statements
made by defendant, is more favorable to defendant than
the usual instruction upon that point. *State v. Van-
sant*, 80 Mo. 67. ( 6 ) The instruction as to dying
declarations is correct. *State v. Vansant, supra*. ( 7 )
The eleventh instruction, that good character does not
justify an acquittal, properly declares the law. *State v.
Kilgore*, 70 Mo. 546. ( 8 ) The twelfth, as to the pun-
ishment for manslaughter in the fourth degree, and the
thirteenth, as to reasonable doubt, are correct. ( 9 ) The
instructions given by the court fairly and prop-
erly presented the whole case to the jury; the other
instructions asked by defendant were embraced within
those given, and were properly refused. *State v. Smith*,
80 Mo. 516 ; *State v. Walton*, 74 Mo. 270.

GANTT, P. J.—The defendant was indicted in the
circuit court of Greene county for murder in the first
degree, for shooting and killing Miss Julia Patterson, on
the fourth of May, 1886. He was convicted of man-
slaughter in the fourth degree, and his punishment
assessed at a fine of $500.

Defendant at the time was a boy about sixteen years
old. Miss Patterson was a young lady employed as a
domestic in defendant's father's family, in Springfield,
Missouri, at the time she was killed. The shooting
occurred in the evening near sundown, in the house of
Dr. Morrison, the father of defendant. No one was
present in the house at the time but Miss Patterson, the
deceased, and defendant.

George Morrison, a cousin of defendant, the only
person near enough at the time to hear anything more

than the report of the gun, was in a building near by, some sixty-five feet distant. Immediately after the report he heard her exclaim, "Oh, Theo, I am ruined," and heard the defendant say, "I didn't know the gun was loaded, Julia; I didn't think there was anything in it." He went in immediately, and as he went in defendant came out hurriedly going for a physician. When George reached Miss Patterson he assisted and supported her. He found her left thumb partly shot off, a slight wound in her arm, and a gunshot wound penetrating her right breast, into the cavity of the chest. She stated to him, and to the friends who came in immediately, and to the physicians that it was an accident. Afterwards, and after she had given up all hope of living, and indeed as to this she seemed impressed from the beginning that she could not possibly recover, and so expressed herself, she made a detailed statement of the shooting as follows: She was out on the porch reading the recipe book, and she said when she got through with that she thought she would go and get the bible, and when she started into the library to get the bible, Theodore came into the room at an opposite door, at another door in this room, and met her with the gun, and she said when she first saw it, she thought it was a curtain pole but as he advanced nearer she saw it was a gun; he was pointing it at her, like he was aiming to shoot her. She said he pointed it at her and looked like he was aiming it at her left breast, and she said she turned and threw up her hand to try to shield herself, and he shot her.

The defendant was sworn in his own behalf. He testified substantially the same as others, to the impaired condition of the gun, and its use as a plaything for months in its unloaded, broken and harmless condition; that there had been no ammunition for a long time about the house which could be used in it, even if in repair; that he knew nothing of his brother Douglass having the cartridge which young Thompson

had given him. Knew nothing about the gun having been loaded by his brother, and had no reason to suppose that there was any load in the gun; that he had no ill feeling of any sort against the girl; that he went in, on the occasion referred to, for no other purpose than to get the gun to have "some fun" with his brother with it; that he found the hammer on the shelf and took it and the gun into his mother's room, and got the screw-driver from the machine-drawer, and screwed it on, resting the muzzle of the gun on his foot while he did it, and snapped the gun several times in that position; that the hammer was broken in such a way that it would hardly ever strike the plunger when snapped, and then only very imperfectly; that, after he had screwed the hammer to its place, he took up the gun, and, still holding it in a horizontal position in both hands, turned to go through the double door, which was hung by heavy curtains, into the library, snapping it as he went, when greatly to his consternation it suddenly went off; that it fired just as the deceased entered the room from the hallway, on the other side; that he never saw her nor did he know she had left the porch until the very moment the gun went off; that he was not conscious of having intentionally pointed the gun at her even in sport; that her appearance into the room and the sudden discharge of the gun were both so unexpected and he was so startled and shocked at what occurred in that moment that he did not know whether he in sport pointed the gun at the girl or not, but, if he did, it was but a flash through his mind, and he has never been conscious of intentionally directing the gun at her for any purpose.

There was evidence of general good character; also evidence that the gun was old and unreliable; that the hammer was too short to hit the plunger right; the end of the hammer was broken off. There was no certainty about the gun firing. It was also in evidence that a

brother of defendant had loaded the gun without defendant's knowledge.

There were some statements of defendant to other boys that he did it intentionally ; but one of them was evidently a joke, and the other highly improbable to say the least. The whole case, fairly considered, seems to be another example of the silly and inexcusable habit of pointing guns at people without intending to shoot them, and as usual resulting in death.

All questions of murder in either degree are out of question. The only matter for consideration is the propriety of the verdict for manslaughter, based upon the culpable negligence of defendant and the giving of certain instructions for the state.

The sixth instruction, given by the court at the instance of the state, is as follows: "6. If you find from the evidence that in a room of the dwelling-house of defendant's father, in the said county of Greene, on or about May 11, 1886, the defendant was carelessly handling a loaded shotgun, and that he saw the deceased, Julia Patterson, near him in said dwelling-house, and that, without examining to see whether the gun was loaded or not, he presented or pointed it toward her, and shot her, inflicting on her body a mortal wound as described in the indictment, and that she died of said wound in May, 1886, and if you further believe from the evidence that said shooting was not intentionally done by defendant, but was the result of his negligence in handling the gun, and of a recklessness and carelessness on his part, incompatible with a proper regard for human life, then you will find defendant guilty of manslaughter in the fourth degree under this indictment."

This instruction was a proper direction to the jury under the facts of this case. It does not, as counsel for defendant seem to think, impose an unlawful burden on defendant. It is a simple declaration of the law that it is culpable, criminal negligence to point a gun at a

human being without having either known it was not loaded or taken some precaution to ascertain it was not loaded. In requiring this much of defendant the court only announced what the law for the protection of human life demands. We find no error in this instruction.

Nor did the court commit any error in giving the eighth instruction, in telling the jury they should consider the fact that the defendant was the prisoner on trial in weighing his evidence. *State v. Cook*, 84 Mo. 40; *State v. Young*, not reported.

There is nothing in the objection to the ninth instruction. It has been approved time and again in this state. No instruction as to defendant's good character was asked or given for the state, and the tenth instruction asked by defendant was given just as prayed. We do not see the force of such suggestions in a brief. The thirteenth instruction given by the court on reasonable doubt is one approved by this court in *State v. Nueslein*, 25 Mo. 111, and more recently in *State v. Young*.

On the part of the defendant the court submitted to the jury the question of defendant's culpable negligence in the fullest and fairest manner. His responsibility was limited to one of his age and discretion; and he was only to be convicted after the jury found him guilty of culpable negligence. We do not see how the trial court could have been any more indulgent than it was. The defendant has no just ground of exception. The jury were fully justified in finding the verdict they did.

And no error appearing we affirm the judgment of the circuit court of Greene county. All the judges of this division concur.