THE STATE v. ED. HYDER, Appellant.

Division Two, May 26, 1914.

1. **EVIDENCE: Veracity of Witness: Testimony in Another Case.** It is not error to refuse to permit defendant to testify that the prosecuting witness swore falsely against defendant in another prosecution. The untruthfulness of a witness cannot be shown by specific untruthful statements.

2. ————: **Remote Threats.** It was not error to permit a witness to testify to threats made by defendant against the prosecuting witness a year prior to the assault with intent to kill. The remoteness of the threat might affect its probative force, but not its competency.

3. **INSTRUCTION: Interest of Defendant and Wife: Comment.** An instruction telling the jury that, in determining the weight and credit to be given to defendant and his wife, they may "take into consideration the fact that he is the defendant and that she is his wife, and the interest they have in the result of the trial," is unnecessary, and is subject to the criticism that it singles out certain evidence for special comment; but in this case, if error at all, was not sufficiently prejudicial to work a reversal.

Appeal from Greene Circuit Court.—*Hon. C. H. Skinker,* Judge.

258 Mo,—15

State v. Hyder.

AFFIRMED.

*Perry T. Allen, Charles J. Wright* and *Edward M. Wright* for appellant.

(1) The court refused to allow defendant to testify relative to Abbott's testimony in a pistol case, wherein defendant herein was defendant. Abbott's attitude in that case would tend to show his animus in this, and the evidence was competent. (2) The giving of instruction 5 was error. The court singled out the defendant and his wife and warned the jury against them. The jury are told that the testimony of defendant and his wife is to be weighed by the same rules that govern the testimony of other witnesses and then that the defendant and his wife are not worthy of belief because they are the defendant and his wife. Stetzler v. Railway, 210 Mo. 712; Baymin v. Railroad, 245 Mo. 615. (3) The effect of singling out a particular witness is quite as baneful to the rights of the party in the criminal case as in the civil case. It was error to single out defendant and error to single out his wife. State v. Mintz, 245 Mo. 546. If the instruction is dangerous and opens the way to grave abuses when a witness is a coindictee, the fact that the witness is a defendant or defendant's wife does not relieve the dangerous aspect or close the way to grave abuses.

*John T. Barker,* Attorney-General, and *Thomas J. Higgs,* Assistant Attorney-General, for the State.

(1) The instruction is the proper instruction as to the consideration to be given by the jury to the testimony of both the defendant and the defendant's wife. State v. Dilts, 191 Mo. 665; State v. McDonough, 232 Mo. 228; State v. Boyer, 232 Mo. 267; State v. Mintz, 245 Mo. 547. (2) Appellant made various threats against the prosecuting witness, Abbott. The first threats made were about two years previous to

the difficulty in question.  Other threats were made a year previous to the difficulty, four months previous to the difficulty, and even on the day of the difficulty. Threats are admissible to show malice and motive, and the nearness or remoteness of these threats in no way affects their competency as evidence, but only the consideration given to such threats by the jury and the weight they would have with the jury in making up their verdict.  State v. Adams, 76 Mo. 355; State v. Wright, 141 Mo. 337; State v. Porter, 213 Mo. 62; State v. Kretschmar, 233 Mo. 29; State v. Whitsett, 232 Mo. 528.

BROWN, J.—Convicted of the crime of assault with intent to kill, as denounced by section 4481, Revised Statutes 1909, defendant appeals from a judgment fixing his punishment at five years in the penitentiary.

The information, which is legally sufficient, charges that defendant, with malice aforethought, shot at, with intent to kill, one Walter Abbott, on May 21, 1912.

For several years prior to the commission of the alleged offense the defendant resided on a farm near Pearl station in Greene county, Missouri.  During that time Walter Abbott, the prosecuting witness, resided on an adjoining farm owned by one W. R. Watson.  More than a year before the assault a strong personal dislike sprang up between defendant and Abbott.  About August, 1911, Abbott disturbed the peace of defendant by cursing and calling him vile names.  For that offense Abbott was prosecuted and fined.  The fining of Abbott did not satisfy defendant, who seems to have wanted personal revenge.  He (defendant) made numerous threats that he would settle with Abbott.  Two days before the assault defendant admits that he voluntarily insulted and cursed Abbott at Pearl station, but it appears that the presence of defendant's brother, Frank Hyder, averted

any assault or fight at that time. The day of the as-sault, defendant was on a train with W. R. Watson (Abbott's landlord) coming from Springfield to Pearl station, at which time defendant made several threats, concerning which witness Watson gave evidence as follows:

"Defendant said, 'I give your baby a talking to the other day.' I says, 'Who was that?' he says, 'Walter Abbott.' I says, 'He is no baby of mine, he is able to take care of himself.' He says, 'He didn't do it the other day;' he says, 'I called him everything I could think of, all the names I could think of, and he took it; he didn't take care of himself.' I says, 'I wish you hadn't stirred that up.' He says, 'You are harboring him under you; God damn you, you get rid of him and don't be long about it.' I says, 'I am not harboring him; he is a gentleman, and he is trying to make a living for his family.' He says, 'He is not a gentleman, he is a God damn s—of-a-b—, and the man that harbors him is no better than he is.' He says, 'You get rid of him and don't be long about it.' I says, 'I can't get rid of him before the first of September; he is going to leave then, but you wouldn't be in any better shape then, for he says he is going to rent Fred Staley's place.' Hyder says, 'No, he ain't, we can't live that close together, this county is not big enough for us both.' I says, 'He says he is.' He says, 'Now God damn you, you get rid of him and don't be long about it.' He says, 'Do you remember what I told you last spring?' I says, 'What was that?' He says, 'You remember about him cussing me that time at the store, and I told you to tell him that if he didn't get right down on his knees in the dirt to me and make his acknowledgment I was going to kill him.' I says, 'I told him, and he never done it, did he?' He says, 'No, but I will do it, though,' He says, 'This thing has got to be settled just as soon as the train comes into

State v. Hyder.

Pearl; we can't live together; God damn him, I am going to settle it as soon as the train gets into Pearl.' "

Charles Ross, who was on the train with defendant and Watson, corroborated Watson as to the threats made by defendant at that time.

On reaching Pearl station witness Watson went immediately to the home of Abbott and informed Abbott's wife of the threats before detailed, whereupon Abbott's wife communicated the threats to her husband, who was working on the public road near-by. She also delivered to her husband a revolver.

Abbott was working with five other persons on a road-grader between Pearl and defendant's house. After remaining at Pearl station about three-quarters of an hour and making inquiry as to where he could find Abbott, defendant walked down to where the latter was at work.

The testimony of the five persons who were working with Abbott, as well as Abbott himself, is that when defendant approached within about twenty steps of Abbott he drew a revolver and said: "Get ready, you ———, I've come to kill you," and shot at Abbott. The shot went wild, and thereupon Abbott drew a revolver and shot defendant. The parties advanced towards each other and continued the shooting. When close enough, defendant knocked Abbott's pistol out of his hand, and as defendant's pistol would not fire any more, he threw it at Abbott. Defendant finally fell and Abbott struck him several times on the head with a rock, and then voluntarily discontinued the fight. Abbott was not struck by any of the shots fired by defendant, but defendant was hit twice by Abbott's shots and was confined to his bed a week or more as the result thereof. There was a slight variance between the witnesses for the State as to the remark made by defendant just before he began shooting at Abbott, but their evidence in substance is identical.

Defendant, testifying in his own behalf, denied making any threats against Abbott, and further testified that he did not seek a difficulty with Abbott, but that Abbott began the attack and fired the first shot. The wife and daughter of defendant, who were about a half mile away and could not see the parties, gave evidence to the effect that they heard the shots and saw the smoke of the pistols, and that said smoke indicated that Abbott began the shooting.

For reversal defendant asserts that competent evidence for defendant was excluded; improper evidence for the State admitted, and an improper instruction given on behalf of the State.

I. Defendant contends that the court erred in refusing to allow him to testify that Walter Abbott, the prosecuting witness, swore falsely against Veracity. defendant in another prosecution. The court did not err in excluding this evidence. While it might have tended to prove that Abbott was unfriendly to defendant, its main purpose was to prove that Abbott was untruthful, which could not be shown by specific untruthful statements. No effort was made to prove that Abbott had the reputation among his neighbors of being untruthful. [State v. Gesell, 124 Mo. 531, 535; 1 Wharton on Criminal Evidence (10 Ed.), sec. 486.]

II. Another contention of defendant is that the court erred in allowing witness Alexander to testify to threats made by defendant against Threats. Walter Abbott a year prior to the commission of the crime of which defendant was convicted. We are not cited to any rule of law which would render this testimony incompetent. A threat of personal violence made long prior to the alleged assault was not as strong proof of malice as one made on the day of the assault, but it undoubtedly had some probative force as tending to prove ill-will and a con-

sequent motive for making the assault. [State v. Adams, 76 Mo. 355, l. c. 357; State v. Porter, 213 Mo. 43, l. c. 62; State v. Whitsett, 232 Mo. 511, l. c. 528.]

III. The most serious insistence of defendant is that the court erred in giving instruction numbered 5, in which the jury was told that, Instruction. in determining the weight and credit which should be given to the testimony of defendant and his wife, they might "take into consideration the fact that he is the defendant and that she is his wife, and the interest that they have in the result of the trial."

This form of instruction has been severely criticized by different members of this court in several cases. [State v. Cook, 84 Mo. l. c. 49; State v. Young, 99 Mo. l. c. 676; State v. Barrington, 198 Mo. l. c. 126.] Speaking for myself, I seriously doubt if it was the intention of the Legislature when it enacted section 5242, Revised Statutes 1909, to authorize courts to single out and direct the attention of juries to the evidence of such witnesses as the court may think are personally interested in the result of the trial—it sounds too much like singling out certain evidence for special comment. The instruction does not tell the jury how much discredit is cast upon the evidence of defendant or his wife by the fact that they are interested in the result of the trial. To my mind the instruction is of little or no value to the State, for it would be a very unsophisticated jury, indeed, which would not intuitively know that the defendant and his wife would be prone to color their evidence in favor of the defense, while a witness possessing no interest would be likely to give a more fair and impartial narrative of the facts. A jury need not be treated like a primary class in a public school.

When the law itself has fixed a rule or guide for weighing evidence, it is not error for the court to tell

the jury by instruction what that rule is, for the reason that such instruction is in fact the comment of the law, and not the personal comment of the court. [State v. Creeley, 254 Mo. 382.] It is clear to my mind that this instruction is unnecessary, and whatever is unnecessary should be omitted, as there is always a possibility that it may prove harmful and confusing to the jury by detracting their attention from matters that are essential. [State v. Mix, 15 Mo. 153; State v. Frazier, 137 Mo. 317; State v. West, 157 Mo. 1. c. 324; State v. Soper, 207 Mo. 502.]

The interest or animus of any witness may be shown for the purpose of affecting his credibility (State v. Pruett, 144 Mo. 92, 1. c. 94; State v. Horton, 247 Mo. 657); and when the testimony of an interested witness comes into a case, the point may be covered by a general instruction telling the jury that if they find that any witness who has testified in the case is related to the parties, or otherwise interested in the result of the trial, the interest of any such witness may be taken into consideration in determining the weight to be given to his evidence.

The form of the instruction complained of has been approved by a majority of the members of this court many times. [State v. Maguire, 69 Mo. 197; State v. Zorn, 71 Mo. 415; State v. Cooper, 71 Mo. 436; State v. Sanders, 76 Mo. 35; State v. McGinnis, 76 Mo. 326; State v. Cook, 84 Mo. 40; State v. Miller, 93 Mo. 263; State v. Young, 99 Mo. 666; State v. Brown, 104 Mo. 365; State v. Morrison, 104 Mo. 638; State v. Young, 105 Mo. 634; State v. Mounce, 106 Mo. 226; State v. Ihrig, 106 Mo. 267; State v. Noeninger, 108 Mo. 166; State v. Turner, 110 Mo. 196; State v. Wells, 111 Mo. 533; State v. Renfrow, 111 Mo. 589; State v. Maguire, 113 Mo. 670; State v. Pratt, 121 Mo. 566; State v. Taylor, 134 Mo. 109; State v. Bryant, 134 Mo. 246; State v. Napper, 141 Mo. 401; State v. Summar, 143 Mo. 220; State v. Miller, 159 Mo. 113; State v.

Adair, 160 Mo. 391; State v. Dilts, 191 Mo. 665; State v. McDonough, 232 Mo. 219.]

Other points are urged by defendant, but we do not consider them of sufficient moment to merit special mention.

The evidence of defendant's guilt is so overwhelming that we do not think the giving of the instruction complained of, if error at all, was sufficiently prejudicial to work a reversal. He had a fair trial, was represented by able counsel, and the judgment will be affirmed. It is so ordered.

*Walker, P. J.,* and *Faris, J.,* concur.