THE STATE v. EDWARD ARNETT, Appellant.

Division Two, May 26, 1914.

1. **EXHIBITING DEADLY WEAPON: Sufficient Evidence.** Testimony for the State that defendant, in the presence of the persons named in the indictment, exhibited in a rude, angry and threatening manner, a pistol which he found lying on the dresser in the house in which he was visiting, that he struck the prosecuting witness over the head with this pistol five or six times, and that in the difficulty the pistol was discharged and said witness was shot therewith through the shoulder, is sufficient to sustain a verdict finding defendant guilty of exhibiting a revolver in a rude, angry and threatening manner, in the presence of others.

2. ————: **Right to Self-Defense.** In the prosecution of a private citizen for exhibiting a deadly weapon, in a rude, angry and threatening manner, in the presence of others, if there is substantial evidence of self-defense in the case, even though such evidence should come from the defendant alone, the defendant is entitled to an instruction upon the theory of self-defense. The proviso to Sec. 4496, R. S. 1909, does not contain all the excuses and defenses to which one charged with a violation of the offense of exhibiting a dangerous and deadly weapon is entitled.

3. ————: ————: **This Case.** Defendant testified that he was in the house of questionable character about two o'clock at night; that while sitting in the back parlor thereof, the prosecuting witness, another visitor, came in, and began to

State v. Arnett.

make threats in a general way and to express his desire to "burst a gun over somebody's head;" that upon seeing defendant, the said witness requested a companion to assist him in putting defendant out of the house; that he (defendant) thereupon remarked that he had better leave, and got up and moved towards the door; that said witness then began to curse him, and he saw a knife in his hand; that he (defendant) then left the back parlor and went into the dining room, where, at its back end, he saw, upon looking around, the pistol he is charged with having exhibited, lying on a dresser; that he took the pistol in his hand and stepped into the hall just as the prosecuting witness came out of the dining room; that said witness made a motion at him with a knife, cutting him upon the hand, and that he then hit him with the pistol, which exploded accidentally. Another witness testified that after the altercation he found a knife sticking in the floor of the hall near the point where the prosecuting witness stood. *Held*, that defendant, charged with exhibiting a deadly weapon in a rude, angry and threatening manner, etc., was entitled to an instruction on the theory of self-defense.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

REVERSED AND REMANDED.

*John A. Gernez* for appellant.

The defendant specifically asked for an instruction on the doctrine of self-defense. This was in full accordance with the theory upon which the case was tried, namely, that if the evidence did tend to show that defendant had exhibited a dangerous weapon, in a rude, angry and threatening manner, he did so under a fear of immediate and imminent danger to himself from the prosecuting witness, who (as the evidence showed) had an open knife in his hand and with which he was cutting at defendant. The court in refusing the requested instruction seems to be of the opinion that under this particular charge, defendant, no matter how grave his danger, cannot plead that his act was done in the defense of his life and person. It is certainly anomalous that were the charge murder or

assault, then the instruction would be proper. Such ruling is neither logical nor founded upon sound judicial discretion. It is quite to the contrary. It denies to men a native, inherent and natural right—the self-protection of his own life. It is in direct conflict with section 17, article 2, of the State Constitution, which guarantees the right of a citizen to bear arms in defense of his person, and this constitutional right would be valueless were he not also permitted to display and use the same arms when pressed. It does not justify the carrying of concealed weapons; indeed, strictly forbids it, but it expressly recognizes the natural right of a person to defend himself when assaulted and, if necessary, even to slay his opponent. Counsel has seen no reason to quote case law authority for the assertions he has made above. There can be no necessity for it. The principles involved are too simple and elementary to require the support of legal adjudications.

*John T. Barker,* Attorney-General, and *Ernest A. Green,* Assistant Attorney-General, for the State.

Defendant asked an instruction upon the subject of self-defense which the trial court refused. This contention of appellant presents a new question under the present statute, which does not expressly except the exhibition of such a weapon in necessary self-defense, as is the case in other states having similar statutes. Consequently, the statute under which defendant was convicted is one to which the language of the Supreme Court of Tennessee in the case of Day v. State, 5 Sneed (Tenn.), 496, would seem very applicable. In that case CARUTHERS, J., speaking for that court said: "We can come to no other conclusion in view of all the provisions of this statute, but that it was the fixed purpose of the Legislature to prohibit the use of this particular weapon for any purpose; it is not to be sold, given away, kept about the person, used or attempted to be

drawn or used, not even upon a 'sudden rencounter.' The right of self-defense is not denied, but this particular instrument is prohibited in the exercise of that right, if it be drawn from any place of concealment about the person. If the knife be thus drawn with malice for the purpose of 'awing or intimidating any person,' the offense is complete. That is the language and spirit of the act, as we think, and the charge does not go beyond it. If men wish to escape these severe consequences, let them discontinue the use of these most dangerous and bloody weapons. The Legislature has prescribed them, and men must disobey at their peril. This construction is inevitable upon both the letter and spirit of the act, and if it invades the right of self-defense the fault is not ours. The Legislature thought the evil great, and to effectually remove it, made the remedy strong. We approve their policy and maintain the act in all its vigor.'' Furthermore, in this particular case there is no evidence of self-defense on the part of the defendant, and consequently he could not complain of the trial court's refusal of an instruction on that subject.

FARIS, J.—Defendant was tried in the circuit court of the city of St. Louis upon an indictment containing two counts, the first of which charged him with carrying a concealed weapon, to-wit, a revolver, and the second thereof with having exhibited such weapon in a rude, angry and threatening manner, in the presence of divers persons named in the indictment. Being put upon his trial the court nisi, at the conclusion of all the evidence, instructed the jury to find the defendant not guilty on the first count in the indictment, but sent the case to the jury upon the second count. The jury found the defendant guilty thereon and assessed his punishment at a fine of $500 and imprisonment in the city jail for a period of sixty days. From this

conviction the defendant, after the usual motions, has appealed.

Since the contention which defendant most strenuously urges upon us is based upon the failure of the court to instruct the jury on self-defense, and since such an instruction, if it was necessary in this case, must arise upon both the law and the facts, it becomes necessary to briefly state these facts.

The persons in whose presence defendant is charged in the indictment with having exhibited the weapon, are Theodore B. Meyers, Ed. Jones, Rosie Cummings and Sarah Porter. The exhibition of the weapon took place at the house of the said Rosie Cummings, 2927 Lucas avenue, St. Louis. The facts upon which the defendant bases his contention that the court should have instructed upon self-defense come for the most part from the defendant himself, but there are to be found in the testimony other statements from other and apparently disinterested witnesses which tend to corroborate the defendant's theory of self-defense.

Defendant testified that he was at the Cummings woman's house on the morning of January 1, 1913, between half past one and two o'clock; that while sitting in the back parlor thereof the prosecuting witness, Theodore B. Meyers, started to come into the room where defendant and others of his party were; that at the same time Meyers was making threats in a general way and expressing his desire to "burst a gun over somebody's head;" that upon seeing defendant in the room Meyers requested a companion, one Chambliss, to assist him in putting defendant out of the house; that thereupon defendant remarked that he (defendant) had better leave, and got up and moved toward the door; that Meyers then began cursing him and he saw a knife in Meyers's hand. Defendant then left the back parlor and went into the back end of the

dining room, where, upon looking around, he saw the pistol which he is charged with exhibiting, lying upon the dresser. He took the pistol in his hand and stepped toward the door which led into the hall just as Meyers, the prosecuting witness, came out of the dining room. Meyers made a motion at him (defendant) with a knife, cutting him upon the hand, and defendant then hit Meyers with the pistol, which exploded accidentally, defendant says. Other testimony in the case from other witnesses is to the effect that after the altercation a knife was found in this hall somewhere in the neighborhood of the place where the scuffle occurred, by one Smith, a witness for defendant, who gave the knife to Police Sergeant Kirk, who was also a witness for defendant. The testimony of the witness Smith, who says that he found the knife in the hall, sticking in the floor near where Meyers stood, slightly corroborates the testimony of defendant himself and aids him somewhat on the question of whether there was or was not testimony justifying an instruction on self-defense.

Upon the trial defendant requested the court to give an instruction submitting the theory of justification on the ground of self-defense and actually prepared and submitted to the court such an instruction. This instruction the court refused to give and likewise refused to give any instruction whatever on self-defense. The court, as was stated in the beginning, took away from the jury the count which charged defendant with carrying the weapon concealed, on the ground that there was no sufficient testimony offered to convict him on that count.

The testimony for the State conclusively showed that defendant not only exhibited this pistol in a rude, angry and threatening manner in the presence of the persons named in the indictment, but that he struck the prosecuting witness over the head with this pistol five or six times; that in the difficulty the pistol was discharged and the prosecuting witness was shot

therewith through the shoulder, and was so badly injured that it became necesary to take him to the hospital where he remained for some six days.

The facts above stated are deemed sufficient to make clear the questions discussed in the subjoined opinion.

I. The defendant assigns as error among other things, that the verdict was not warranted by the evidence. Since this case, for the reasons hereafter to be developed, must be reversed and remanded for a new trial, it is not necessary at this time to go very carefully into this assignment of error. Suffice it to say, however, that in our view the evidence, while conflicting, was, if the jury believed it, as they evidently did, sufficient to warrant the verdict which the jury reached upon the second count of the indictment.

*Sufficiency of Evidence.*

Other contentions made, such as that the court erred in admitting incompetent, irrelevant and improper testimony on the part of the State, and that the court permitted counsel for the State to engage in improper and unfair argument in his closing speech to the jury, we need not here consider, since it is not probable that these things will occur again.

II. This brings us to the chief point in the case and the one most strenuously and insistently urged upon us by learned counsel. This question is, should the court have given an instruction for self-defense under the facts shown upon the record, which facts, in order to illustrate the point involved, we have briefly detailed in the statement. As a conceded major premise we may admit that this court has uniformly held that where there is substantial evidence of self-defense in a case the defendant is entitled to an instruction upon that theory, even though such evidence

*Exhibiting Dangerous Weapon: Self-Defense Available.*

should come from the defendant himself alone. [State v. Weinhardt, 253 Mo. 629; State v. Bidstrup, 237 Mo. 273; State v. Richardson, 194 Mo. l. c. 344.] Here there is in the record some considerable corroboration for the theory of self-defense as it is presented by defendant's testimony. If this had been a prosecution for any homicide or for an assault with intent to kill, there is no manner of doubt that under the well ruled adjudications and under the well settled law of this State the defendant would have been, under the facts and evidence, entitled to an instruction on the ground of self-defense. [State v. Fredericks, 136 Mo. 51; State v. McKinzie, 102 Mo. 620; State v. Porter, 213 Mo. 43.] In our view the evidence offered by defendant to substantiate his theory of self-defense, was, other things being equal, entirely sufficient to go to the jury for that purpose, if we find such a defense permissible in this sort of case. The question, however, arises (and this we infer is the view the learned trial court took of this case), whether such an instruction is ever warranted in a prosecution such as this is, or in any prosecution for any of the offenses denouncing the carrying or exhibiting of dangerous and deadly weapons. In other words, has the Legislature written into section 4496, in the proviso therein, every defense and every excuse which the Legislature intended should justify one charged with a violation of any of the divers offenses therein denounced?

A reference to this section will show that its provisions may be violated at least five different ways. *Arguendo,* we may say for the purpose of illuminating the point in hand, and not for the purpose of definite decision or to establish a hard-and-fast rule, that this section makes it an offense (a) to carry a dangerous or deadly weapon concealed upon or about the person; (b) to go into any church or assembly for religious worship, or into any school room or place of public assembly, or to any election precinct on election day,

State v. Arnett.

or into any court room during a session of court, or
into any other public assemblage of persons (except
military drills), having such weapon upon or about
the person, whether concealed or exposed; (c) or to
exhibit any such weapon in the presence of one or more
persons in a rude, angry or threatening manner; (d)
or to have any such weapon in possession when intoxi-
cated; (e) or to sell or deliver, loan or barter, directly
or indirectly, such weapon to any minor without the
consent of such minor's parent or guardian. To this
section there is appended a proviso setting out defenses
which justify, to-wit, that "nothing contained in this
section shall apply to legally qualified sheriffs, police
officers and other persons whose *bona fide* duty is to
execute process, civil or criminal, make arrests, or aid
in conserving the public peace, nor to persons traveling
in a continuous journey peaceably through this State."

To repeat the point vexing us and to reduce that
point to its last analysis, we may propound the ques-
tion: Does the proviso quoted contain all and every
of the defenses which may be urged in any prosecution
for any violation of any of the several offenses above
analyzed and in said section denounced? We think it
is manifest from the terms of said section alone and
from so much of it as we have quoted, and wholly aside
from the consideration of other rules of law or of ab-
stract justice, that the conclusion that the proviso set
out does mention all the defenses which are permitted
to be made, is illogical and cannot be sustained. For
it will be noted that it is made a felony to directly or
indirectly sell such a weapon to any minor without
the consent of such minor's parent or guardian. Can
it be urged with any basis of reason or logic that while
it is an offense for the ordinary private citizen, who
is not an officer, to sell dangerous and deadly weapons
to minors, it is not an offense for a sheriff or a police
officer, or a person traveling peaceably in a continu-
ous journey through the State to make such sale? We

think not. Again, will it be contended that one merely passing through "an election precinct on an election day" with a shot gun, with a *bona fide* intent to go hunting, or while returning from hunting, is guilty of the offense denounced by this section merely from the fact that he is carrying in plain and open view such shot gun or a rifle? It militates but little against this argument that as it appears in this statute the term "election precinct" is used as synonymous with "polling place;" yet it is manifest that a hard-and-fast construction of this section, as urged upon us by the State, would bring about both of these unthinkable and illogical results, as well as many others equally absurd. In the instant case it is fairly clear that the defendant in exhibiting this pistol in a rude, angry and threatening manner and in assaulting the witness Meyers by striking him over the head five or six times therewith, and by shooting him through the back with it, came more nearly within the purview of the crime of assault with intent to kill, or of an assault to do great bodily harm, as denounced by sections 4481 and 4482, Revised Statutes 1909, than he did within those denounced by section 4496, which deals with the carrying and mere exhibition, under conditions set out, of dangerous and deadly weapons. It would not be seriously urged, we apprehend, that if defendant had been charged with an assault with intent to kill, or with an assault with intent to do great bodily harm to the prosecuting witness, Meyers, he would not have been entitled, under the facts here, to an instruction on self-defense. Nothing seems clearer than that if we were to write into the law of this State a rule which forbids the defense of self-defense in a case where the specific charge is the exhibition of a dangerous and deadly weapon in a rude, angry or threatening manner, we would by the same token cut off *bona fide* defenses in cases where no law has in fact been violated and would subject the citizen to imprisonment, or to the

danger of imprisonment, in the penitentiary in cases where he was in nowise at fault. For example: Applying this reasoning to the facts in the case and changing only the place of occurrence: if the defendant, who it seems is a saloon-keeper, had been in his place of business, instead of being at the questionable place where the record finds him, and the identical persons in whose presence he is charged with having exhibited the weapon had come into his saloon armed, and had attempted to assault him, and he had then and there drawn, to protect his life and property, a pistol, and being righteously angry and therefore rude, had threatened them and ordered them from the saloon, he could in that case have been prosecuted under this section, and while entirely innocent and wholly within his rights as a citizen, could have been convicted and sent to the penitentiary.

Nothing seems plainer than that such a possible condition was not intended and could not have been intended by the Legislature—if the rights and the safety of the citizen are intended to be protected—and that therefore the section does not in the proviso quoted, contain all of the exceptions and defenses open to one charged with *exhibiting* a dangerous or deadly weapon. If this is not so, then it lies within the power of the several prosecuting attorneys in the State in all cases where persons have used such weapons in protecting their lives or property from the assaults of others, absolutely to cut from under them one *bona fide* defense by the simple expedient of indicting the defendant under the provisions of section 4496, instead of under sections 4481 or 4482, supra.

In our view, no such construction can in fairness be put upon the provisions of this section. If it was designed to abrogate the right of self-defense and if its affect be to do so, it is then more than possible that its constitutional validity might well be questioned, for that it whittles away a large part of that "natural

right to life, liberty and the enjoyment of the gains of their own industry,'' which is vouchsafed to the citizen by the organic law. [Sec. 4, art. 2, Constitution of Missouri.]

For these reasons we are of the opinion that the court erred in refusing to instruct the jury on self-defense, and that this case ought to be reversed and remanded to the end that it may be tried in accordance with these views. Let this be done.

*Walker, P. J.*, and *Brown, J.*, concur.