## THE STATE v. HENRY FINKELSTEIN, Appellant.

In Banc, January 29, 1917.

1. **CAUTIONARY INSTRUCTION: Interest of Defendant as Affecting Credibility.** It is reversible error to instruct the jury that, in determining the weight to be given to the testimony of a defendant in a criminal case, or to the testimony of his wife. when called as a witness in his behalf, they may take into consideration the fact that he is the defendant on trial, and the interest which they have in its result. The instruction singles out the defendant, or his wife, as a witness, is a warning by the court to the jury to consider his or. her testimony with suspicion and to be careful how they give credence to what either has said, and is an invasion of the right of the jury whose province alone it is to determine the credibility of a witness. Such an instruction has often been ex-

State v. Finkelstein.

pressly condemned in civil cases, and as life and liberty are dearer in the eyes of the law than property it should also be condemned in criminal cases.

*Held*, by FARIS, J., dissenting, with whom WILLIAMS, J., concurs (1) that the point that the giving of such an instruction was error is not sufficiently raised to be considered on appeal by the one assignment in the motion for a new trial that "the court gave the jury illegal and improper instructions over defendant's objections," because in a criminal case the statute (Sec. 5285, R. S. 1909) requires the motion to "set forth the grounds or causes" for a new trial; and (2) that, while such instruction has sometimes been criticised as useless, it has, in numerous cases, for more than forty years, been held not to be reversible error, and the objection against it raises no new question.

2. ———: ———: Statute. The statute (Sec. 5242, R. S. 1909) making the defendant or his wife a competent witness in his behalf and declaring that the fact that he is the defendant and on trial "may be shown for the purpose of affecting the credibility of such witness," relates to matter of proof, and falls far short of authorizing an instruction singling out such witness and calling attention to such facts as matters that affect his or her credibility. The statute is one removing disabilities of witnesses, and is in substance and meaning the same as the statute (Sec. 6354, R. S. 1909) removing the disabilities of witnesses because of interest in civil cases.

*Held*, by FARIS, J., dissenting, with whom WILLIAMS, J., concurs, that there is no precisely similar statute in the civil practice to Sec. 5242, R. S. 1909, but the civil statute is different in its history, provisions and even verbiage, and was enacted in 1855, and assumed its present form in 1865, and did not then, nor does it now, contain any words as to the competency of the spouse of a party to testify for him or her at the price merely of diminution of credibility; whereas, the criminal statute removing the incompetency of the defendant as a witness was enacted in 1877 and amended in 1879 so as to allow the spouse of the defendant to testify, and the two statutes cannot therefore be held to be *in pari materia*.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher*, Judge.

REVERSED AND REMANDED.

*T. J. Rowe, Thos. J. Rowe, Jr.,* and *Henry Rowe* for appellant.

(1) The trial court erred in refusing to instruct the jury on all the questions of law arising in the case and

necessary for their information in reaching a correct verdict. Sec. 5231, R. S. 1909. (2) The court erred in refusing to instruct the jurors on the law of self-defense, although requested so to do by the defendant. (3) The court erred in giving instruction number 7, telling the jury that the defendant and his wife were competent witnesses and their testimony should be weighed by the same rules that governed the testimony of other witnesses, with the exception that in passing upon it they should take into consideration the fact that the defendant was the defendant in the case and that witness Helen Finkelstein was his wife, and the interest they had in the result. State v. Mintz, 245 Mo. 542; State v. Evans, 183 S. W. 1066; State v. Shaffer, 253 Mo. 338.

*Frank W. McAllister,* Attorney-General, *S. P. Howell,* Assistant Attorney-General, and *Lewis H. Cook* for the State.

(1) The court did not commit error in refusing the instruction on self-defense for the reason that both the evidence of the State and the defendant's testimony showed that such a theory was contradicted by the physical facts. State v. Nelson, 118 Mo. 127; State v. Pollard, 139 Mo. 228; State v. Hamilton, 170 Mo. 382; State v. Fraga, 199 Mo. 136; State v. Vaughan, 200 Mo. 22; State v. King, 203 Mo. 570; State v. Arnold, 206 Mo. 600; State v. Tucker, 232 Mo. 18; State v. Hearney, 177 S. W. 307. (2) Under the condition of the record in this case any insufficiency in instruction number 7 is not available as a ground for reversal. State v. Gifford, 186 S. W. 1060; State v. McBrien, 265 Mo. 605; State v. King, 194 Mo. 481; State v. Douglas, 258 Mo. 296; State v. Kapp, 187 S. W. 1180; State v. Gilbert, 186 S. W. 1003. (3) If, however, the court should hold that instruction number 7 is properly saved for review, then we submit that the giving of such an instruction does not, under the facts of this case, constitute reversible error. State v. Maguire, 69 Mo. 197; State v. Shaffer, 253 Mo. 338; State v. Creeley, 254 Mo. 396; State v. Hyder, 258 Mo. 231; State v. Evans, 183 S. W. 1067.

REVELLE, J.—So much of the evidence as is pertinent here is: The defendant is a married man; on September 12, 1915, his wife absented herself, going to a hotel, where she took up residence with the deceased and a woman with whom he was unlawfully cohabiting, all occupying the same room. On the night of the 12th of September, 1915, the deceased brought a man by the name of Belrose to the room, evidently for the purpose of illicit relations with the defendant's wife. This she resented, and as a result of the disturbance which ensued, the deceased was required to leave the hotel. The following day the two women and the deceased removed to another place. Shortly thereafter the defendant called upon Belrose and made threats against both the deceased and Belrose. The deceased was informed of this and thereupon stated to the defendant's wife that he and Belrose were going to kill the defendant. On the same night, the defendant and the deceased met, and the deceased made two unsuccessful attempts to discharge his pistol at and against the defendant. On that night and at about one o'clock thereafter, the deceased told the defendant's wife that had his pistol discharged as he had intended, the defendant would then be dead. This information was communicated by the wife to the defendant. On the following day the defendant and the deceased met at 22nd and Olive Street, the deceased inquiring whether the defendant really desired to ascertain the whereabouts of his wife. · Upon receiving an affirmative reply, the defendant and the deceased walked a short distance, when the shooting took place. The State's evidence discloses that the defendant shot twice while the deceased was running from him, both of which struck the deceased in the back, and either of which was fatal. The defendant's evidence tended to show that immediately prior to the shooting, the deceased, after indulging in certain profanity, pulled from his pocket a pistol, which was instantly seized by the defendant, and that the same was thereupon twice discharged.

I. If the judgment in this case cannot be upheld it is because the court did not submit to the jury the alleged issue of self-defense, or because it gave a cautionary instruction as to the testimony of the defendant and his wife.

Instruction on Self-Defense.

As to the first assignment, we start with the major premise that where there is substantial evidence of self-defense in a case, the defendant is entitled to an instruction upon that theory, even though such evidence comes wholly from the accused himself. [State v. Weinhardt, 253 Mo. 629; State v. Bidstrup, 237 Mo. 273; State v. Richardson, 194 Mo. l. c. 344; State v. Arnett, 258 Mo. 259, 260.]

There is in this case, for the purpose of this point, ample evidence that the deceased had not only previously threatened, but had, a few days prior to the homicide, actually attempted to take the life of the defendant, his effort being unsuccessful merely because of the failure of his pistol to work as intended.

For some days the defendant's young wife, having deserted her husband, had been living in rather questionable quarters with the deceased and his companion, and the deceased had importuned her to yield to illicit relations with at least one of his friends. The defendant, while seeking his wife's whereabouts, came in contact with the deceased, who, after a short conversation, in which he reminded the defendant that he had intended killing him on a former occasion, drew a pistol, which the defendant instantly seized, whereupon the same was twice discharged. Had the testimony of the defendant here ended, there could be substantially no doubt as to the propriety and necessity of an instruction on self-defense, since we would have a case of former threats, an immediately prior deadly assault, a wicked motive and a demonstration of violence clearly presenting the appearance of impending danger. With these *facts* in evidence does the bare, bald statement of the defendant that the shooting was accidental, malicious, or in self-defense,

become binding for the purpose of determining the *law?* Had the defendant followed his statement of facts with the conclusion that he acted in self-defense the State's argument against an instruction on this phase would be without basis, it being conceded that under such circumstances the instruction should have been given. Instead of this, he stated that the shots were accidentally fired, and it is upon this that the State relies in justifying the trial court's refusal to give the instruction.

This argument, when reduced to its last analysis merely means, that after the facts have been detailed, the conclusion of the defendant thereon determines the *law* of the case. This is not the law of the land. There was other and ample evidence contradicting the defendant's statement and tending to show that the shooting was not accidental, and unless this were true the verdict of guilty would have to be interfered with on other grounds. The defendant testified that at the time of the shooting he was thoroughly excited, and under the circumstances, a normal man would be. The jury might reasonably reject his statement that the shooting was accidental, believing the other evidence on this phase, and yet believe the remainder of his and his wife's testimony which tended to show that he was justified in acting in self-defense. With the facts before it, the jury was no more bound by the defendant's statement that the shooting was accidental than it would have been had he bluntly stated that it was in self-defense. Of course if the State's evidence as to all the facts and that the deceased was shot in the back is believed, there is no room for self-defense in the case, but, regardless of this, the defendant had the right to have the theory of his defense properly presented and definitely determined by the fact-tryers. It is our opinion that an instruction on self-defense should have been given and that the failure of the court to submit this issue, requires a reversal of the judgment.

II. As with Banquo's ghost, the question of the propriety of the cautionary instruction on the testimony of the defendant and his wife, will not down. My views on this subject are fully expressed in State v. Evans, 183 S. W. 1059, and to these I still adhere. While the instant case is one which · to my mind comes near the danger line, it is unnecessary to determine the question in view of the error heretofore pointed out and because of which the judgment is reversed and the cause remanded.

Cautionary Instruction.

PER CURIAM:—This opinion of former Judge REVELLE, being up for consideration by the Court in Banc, the result of the same is adopted by such court. *Walker, J.,* concurs in first paragraph of the opinion and in the result; *Graves, C. J.,* concurs in the result of the opinion in a separate opinion, in which separate opinion of *Graves, C. J., Bond, Blair* and *Woodson, JJ.,* concur; *Faris, J.,* dissents in an opinion in which *Williams, J.,* concurs.

GRAVES, C. J. (concurring).—I think it is time that this court was making some clearly defined announcement upon the propriety of giving in criminal cases, an instruction like instruction numbered 7 involved here. That such an instruction has had the passive approval of this court in previous cases, goes without question. But it is equally true that it has met with much criticism. As a trial judge I gave it, because of its tacit approval here, and not because of any sound legal reason for giving it. Many circuit judges have done and are now doing the same thing. When the matter was first presented to me here, in a dissenting opinion in State v. Barrington, 198 Mo. 1. c. 126, I hesitated to concur with VALLIANT, J., in his assault upon such an instruction. The hesitancy was not for lack of force in his reasoning, but on account of the line of previous criminal-case rulings. The civil-case rulings were not then firmly fixed. I therefore left this question out of consideration, and simply concurred with him upon three other grounds,

naming them, leaving this ground of his dissent without my approval or disapproval. [Vide 198 Mo. 1. c. 133.] In the Barrington case, 198 Mo. 23, VALLIANT, J., at page 126 said:

"If the jury were to weigh his testimony under the same rules as the testimony of the other witnesses was to be weighed, why single him out and caution the jury to bear in mind his interest and therefore (by implication) his strong temptation to testify falsely in his own behalf?

"There is no authority in our statute for such an invasion of the jury's province. Section 2637, Revised Statutes 1899, which gives a defendant, or the wife or husband of a defendant, the right to testify in his behalf, says that the fact of the interest may be shown, that is, proven, for the purpose of affecting his or her credibility, but that does not authorize the court to single out the witness, whether it be the defendant or the defendant's husband or wife, and comment on his or her testimony; in fact section 2639 expressly forbids the court to comment on the evidence. I am aware that instructions of like character in other cases have been approved by this court, but I am not reconciled to them."

The two sections here named are now sections 5242 and 5244, Revised Statutes 1909. It is hardly necessary to consider the latter section, if we give to the former a fair construction. The statute was one to remove disabilities. We have such statutes as to witnesses in civil cases. Section 6354, Revised Statutes 1909, so far as pertinent reads:

"No person shall be disqualified as a witness in any civil suit or proceeding at law or in equity, by reason of his interest in the event of the same as a party or otherwise, but such interest may be shown for the purpose of affecting his credibility."

We have here the clause, "but such interest may be shown for the purpose of affecting the credibility of such witness." In section 5242, supra, the clause reads: "but any such facts [the fact of being the defendant on trial, or the husband or wife of defendant on trial] may be

shown for the purpose of affecting the credibility of such witness.'' In legal effect the two clauses are identical. If in criminal cases the court can point to a defendant or his wife, and tell the jury that they are, by the grace of the law, made competent witnesses, yet you must consider their interest in determining the credibility of their testimony, then by the same token the court, if requested by a party to the suit, would likewise have to point out by name some interested witnesses in a civil suit, and give the jury the same caution. This because the two statutes are identical in legal effect. Yet in civil cases this form of an instruction has been specifically condemned. [Stetzler v. Met. St. Ry. Co., 210 Mo. l. c. 713.] This ruling had the unanimous approval of Division No. One. Not only so, but we have the unanimous opinion of Division No. Two, on a similar question in a civil case. [Montgomery v. Railroad, 181 Mo. l. c. 494.] I had the honor of trying that case *nisi*. The defendant offered the following instruction:

"While the plaintiff, Bertha Montgomery, is a competent witness in her own behalf, yet the jury in determining what weight, if any, they will give to her testimony, have a right to consider her interest in the result of this litigation; and what she has testified to against her interest, if any, is to be taken as true and what she has testified to in her favor is to be given only such weight as the jury may believe from all the evidence in the case it is entitled to.''

I refused this instruction, notwithstanding the fact that I had before me the then very recent opinion of Division No. One by MARSHALL, J., in which a similar instruction was held to be proper. It should be said the opinion was not agreed to by VALLIANT, J. I refer to case of Feary v. Met. St. Ry. Co., 162 Mo. 75. No case created more uproar among lawyers of the State than this Feary case, and Division No. One cured its own error in Stetzler v. Met. St. Ry. Co., supra, but not until Division No. Two had taken all the life out of the Feary case ruling in the Montgomery case, supra.

About the same time, as the trial judge, I again re-
fused to give this same instruction in Conner v. Railroad,
181 Mo. 397, and its refusal was again approved by Divi-
sion No. Two of this court. The question was then a live
issue after the ruling in Feary's case. It was discussed
from all angles, some circuit judges following the Feary
case, and others declining to follow it. The matter was
clearly put at rest, so far as Division No. Two was con-
cerned, by the clean-cut language of GANTT, J., in Zan-
der v. Transit Co., 206 Mo. l. c. 461, whereat he said:

"The 11th instruction given for the defendant was
erroneous in that it singled out the plaintiff as a witness
and usurped the province of the jury in weighing his evi-
dence. This instruction was disapproved in Montgomery
v. Railroad, 181 Mo. 477; Conner v. Railroad, 181 Mo.
l. c. 415 and 417; and Ephland v. Railroad, 137 Mo. l. c.
198. Such instructions in civil cases are a direct com-
ment upon the weight of the plaintiff's testimony, and
are not to be tolerated. This particular instruction re-
ceived full consideration in Conner v. Railroad, 181 Mo.
l. c. 415 et seq., and it is not necessary to discuss it fur-
ther."

As said above, Division No. One righted its own
error in Stetzler v. Met. St. Ry. Co., 210 Mo. l. c. 713,
when VALLIANT, J., for the whole membership of said
Division, said:

"The interest that a witness has in the litigation
may be shown, to be considered by the jury in weighing
her evidence, but when that fact is shown the jury should
be left to exercise its own judgment as to the weight to
be given the testimony. It has so long been the practice
for the courts to instruct the juries that in weighing the
evidence they shall consider the interest, if any, the wit-
nesses have, and their demeanor on the stand, that no
question is now raised as to general instructions of that
kind, but if the courts have the right to instruct at all
on that subject that is as far as they should go, and even
to that extent instructions should not be given unless
there is evidence to justify them. *But the court has no
right to single out a particular witness, whether she be*

*a party to the suit or not, call attention to her interest' as an inducement liable to cause her to give false testimony (for that is what the warning means) and tell the jury to be careful how they give credence to what she may say."*

It thus appears from the cases of Zander and Stetzler, both divisions of this court got together upon the proposition that it was error to single out a witness because of his interest in the result, and caution the jury as to his testimony. In civil cases with the same statute, the court condemns such an instruction. If an instruction singling out witnesses having an interest is improper in civil cases, as both divisions of this court has held, how much more so should it be held improper in a case of life and death! If in a civil case, such an instruction, as GANTT, J., in Zander's case, said, "was erroneous in that it singled out the plaintiff as a witness and usurped the province of the jury in weighing his evidence," cannot stand, what reason can be urged for it in a criminal case? It will not do to justify it on the statute, section 5242, supra, because the civil section (6354) is the same in legal effect. They are both enabling statutes, and both have practically the same clause as to the credibility of the witnesses.

In the case at bar a general instruction on the credibility of witnesses was given. This is as far as the court should have gone. The giving of instruction numbered 7 was error, for which the judgment should be reversed and the cause remanded. The matter is so fully discussed by BLAIR, J., in State v. Evans, 183 S. W. 1059, that it would seem almost superfluous to go into the civil statute and civil rule as far as I have gone. The judgment should be reversed and the cause remanded upon this ground at least.

I therefore concur in the result reached in the opinion by REVELLE, J., in Division. *Bond, Blair* and *Woodson, JJ.*, concur in these views.

FARIS, J. (dissenting).—I dissent from the learned majority opinion filed in this case in Division Two and

now up for approval here, for the reasons which I set forth below herein.

But two grounds of reversal are relied on. One of these (and the only one discussed in the majority opinion) is bottomed upon the failure of the learned court *nisi* to instruct 'on self-defense. The other one, while not discussed in the majority opinion, is again urged upon our consideration, both in the brief and in argument, and is bottomed upon the alleged erroneous giving of the conventional instruction upon the weight to be given by the jury to the testimony of defendant' and his wife. I do not think that under the facts and circumstances of this case either one of these alleged grounds constitutes reversible error. My reasons for these views are these:

In the first place I do not concede that there is any sufficient foundation of fact in the testimony of defendant upon which to bottom an instruction on self-defense. Unless such instruction can be bottomed upon something the defendant said, then it confessedly can find no basis elsewhere in this record; all other testimony and the physical facts themselves contradict utterly any theory of self-defense. The facts showing whatever of self-defense there is in this case are stated with substantial accuracy in the majority opinion and I need not cumber these present views with another recital of them. Manifestly they are not sufficient on which to base an instruction for self-defense. This much I submit upon the facts. But even if it be conceded for argument's sake, that the testimony which the defendant gave does entitle him to an instruction on self-defense, the failure to give such an instruction would not constitute reversible error in this case for two reasons, both of which are buttressed both by reason and authority.

The first well-settled rule which we must abolish is, that where the physical facts conclusively show (as I submit they do here) that the testimony of the defendant is wholly incredible, the trial court is not required to stultify itself by instructing upon such testimony, and therefore the failure of the court to do so will not constitute reversible error. The following cases uniformly

ruled by us through many years without change or shadow of turning, so hold: State v. Anderson, 89 Mo. 1. c. 332; State v. Gilmore, 95 Mo. 1. c. 565; State v. Tabor, 95 Mo. 585; State v. Bryant, 102 Mo. 24; State v. Turlington, 102 Mo. 1. c. 663; State v. Talmage, 107 Mo. 571; State v. Nelson, 118 Mo. 1. c. 127; State v. Brown, 119 Mo. 1. c. 538; State v. Vaughan, 200 Mo. 1. c. 22; State v. Holloway, 161 Mo. 1. c. 144; State v. Tucker, 232 Mo. 1. c. 18.

As appositely as if he had been writing an opinion *upon the identical facts of the instant case*, SHERWOOD, J., said in the case of State v. Holloway, supra, at page 144, this:

"But it is insisted that the fourth instruction given at the State's instance, is incorrect as regards the doctrine of self-defense. This may be true, and yet that furnishes defendant no legitimate ground of censure upon that instruction for the palpable reason that *there was no self-defense in this case;* and the physical facts in the case as well as the evidence show deceased was shot in the back as he was attempting to escape from the murderous aim of his adversary, and they show also that defendant was not cut on the hand or on the face, as he pretends he was. The shot in the back of a fleeing adversary, shows the true animus of defendant in doing the fatal act; shows it was not prompted by self-defense. Neither courts nor juries should stultify themselves by believing physical impossibilities. No amount of perjured testimony can break down the fact that deceased was shot almost squarely in the back. This could not have occurred if Watts was advancing on defendant all the time, as defendant swears he was."

Again the same learned jurist said upon this point in the case of State v. Pollard, 139 Mo. 1. c. 228: "Heretofore we have said, and we have frequently repeated the observation, that neither courts nor juries are required to yield credence to the statements of a witness who, to save himself from justly merited punishment, challenges the array of all the physical facts in the case, and then

boldly invokes instructions based upon such simulated evidence."

Likewise the same rule is invoked in civil cases [Huss v. Bakery Co., 210 Mo. 1. c. 69; Baker v. Railroad, 122 Mo. 1. c. 593; Payne v. Railroad, 136 Mo. 1. c. 584.] But I must pass on.

The other rule and the holding which we must likewise overrule, is that where evidence of a thing rests solely in the mental attitude of the defendant, that attitude, as shown by defendant's expressed intent disclosed by him in his sworn testimony, may be deemed to be true; to the extent, at least that he will not be heard to bottom error on the act of the trial court in instructing along the line of his sworn intent, or in failing to instruct contradictory to that solemnly expressed intent. [State v. Curtis, 70 Mo. 594; State v. Reed, 137 Mo. 1. c. 138; State v. Shuster, 183 S. W. 296.] In the Reed case, supra, BURGESS, J., speaking unanimously for Division Two, said:

"According to defendant's own statement, he did not fire the fatal shot in order to prevent the commission of a felonious assault upon Cross, but fired it to prevent a felonious assault upon his brother, and fired the two following shots in self-defense. No one knew defendant's purpose in shooting Winn so well as he did himself, and he was not entitled to an instruction utterly inconsistent with his own evidence, as to that purpose."

So, for these two reasons, in addition to the impassable one, that there is nowhere in the record any sufficient testimony on which to base an instruction for self-defense, I think the court's action in refusing to instruct was fully warranted and that in order to hold otherwise both lines of cases above mentioned must be overruled. If the above cases are to be overruled it ought to be done frankly and specifically, so that the Bench and Bar may know that we are overruling them.

II. Upon the point of the instruction given by the court *nisi* upon the weight and credibility to be accorded by the triers of fact to the testimony of defendant and

269 Mo.—40

his wife, I likewise think there was no reversible error. This point was strenuously urged upon our attention both in the argument In Banc and in the brief of appellant, though passed in the opinion of our learned brother REVELLE *sub silentio,* being upon the facts in the instant case, in his view, unnecessary. My position that there is no error in the giving of this instruction is bottomed on two reasons, which I discuss briefly. One is that the point is not properly raised in the motion for a new trial. The other is that we have, since 1878, uniformly held, that such an instruction is not error. Let us look to these two points in their order.

Attending to the first one thereof, to-wit, the lack of sufficient assignment of error in the motion for a new trial, we note that the only assignment of error in the whole of defendant's said motion which even squints at such a raising of this question, reads thus: *"Because the court gave the jury illegal and improper instructions over defendant's objections."* This, I submit, is not a sufficient assignment of error in a criminal case. [State v. Gifford, 186 S. W. 1058; State v. Taylor, 183 S. W. 1. c. 301; State v. Levy, 262 Mo. 1. c. 190; State v. Sykes, 248 Mo. 1. c. 712; State v. Dockery, 243 Mo. 592; State v. Wellman, 253 Mo. 1. c. 316; State v. Chissell, 245 Mo. 1. c. 554; State v. Horton, 247 Mo. 1. c. 663.] Regardless of the rule in a civil case, which as to this practice is governed by a different statute (Cf. Secs. 5285 and 2022, R. S. 1909), this assignment lacks sufficiency in a criminal case (Sec. 5285, R. S. 1909); because (in addition to the provisions of the statute last supra, which requires to be "set forth the grounds or causes" for a new trial) we are required by statute to seek out error from the record *whether there be joinder in error or not, and whether there be a brief on file for defendant or not* (Sec. 5312, R. S. 1909.); indeed, we are required by this solemn statute to seek out error of our own volition, through lengthy folios of a mere written or typewritten transcript, and without the aid even of a printed record. I do not consider this assignment sufficient even in civil practice, even though we require in that practice in this court, as a

condition precedent to review, that the appellant in his brief put his finger on and specifically assign the error he wants us to review. If he does not do this we refuse to review the alleged error at all. [Vahldick v. Vahldick, 264 Mo. 529; Bank v. Hutton, 224 Mo. 1. c. 53; Sullivan v. Holbrook, 211 Mo. 99; Maplegreen Co. v. Trust Co., 237 Mo. 350.]

That we have upon the instant appeal finally got defendant to point out for us the instruction to which he objects, does not help matters, for we may have no such adventitious aid in the very next case we are required to review; and it goes without saying, if the rule applies in a criminal case which is briefed, it likewise applies in a criminal case which is not briefed. The result would be that the wholly unnecessary burden of microscopically examining each and every instruction given by the trial court would be put upon this court in every criminal appeal, whether there be a joinder in error or not, and whether there be a brief filed or not.

In a civil case, as forecast above, there is afforded by the strict rule which requires an assignment of error, full protection against this sort of useless assault upon the limited time of this court. [Vahldick v. Vahldick, supra; Bank v. Hutton, supra; Sullivan v. Holbrook, supra.] In a criminal case no such protection by a rule is possible on account of the statute above cited. But even if specific assignments of error in a civil case were not compelled by our rules and our rulings, the motion for a new trial in this case would not be a sufficient assignment in a civil case to require at our hands a review of the instruction attacked. The assignment of error in the late but much disputed case of Wampler v. Railroad, *ante,* p. 464, did not upon the facts therein up for ruling warrant our going to so great a length as we must go in this case in order to bottom a review upon the assignment of error herein. In the Wampler case, the assignment of error in the motion for a new trial substantially averred that "the instructions and each of them given for and on behalf of plaintiff were erroneous." This of course was sufficient and was just as specific as if it had

been therein averred that "instructions numbered 1, 4, 7 and 11, given by the court on behalf of plaintiff, are and each of them is erroneous." No one giving heed to the age-old rulings of this court, will contend that the assignment last above is not sufficient on authority. More than this ought not to be required touching an error bottomed on an instruction. But so much substantially ought to be required, if for no other reason than that of expediting measurably the practice in the appellate courts.

Four days are allowed within which to file a motion for a new trial. Almost any lawyer ought to be able to find out in four days which particular numbered instruction, or instructions given adversely to his side by the court *nisi*, are erroneous. Apposite to this very point and others akin thereto by analogy, the writer said in a late criminal case, this:

"But we are precluded from examining this point in this case for the reason that defendant's sole assignment of error in his motion for a new trial upon the point now urged is thus stated: 'The court erred . . . in not declaring all the law in this case necessary for the information of the jury in arriving at their verdict.'

"This is not a sufficiently specific assignment of an error urged here as being bottomed upon the giving by the court *nisi* of an erroneous instruction, or for the failure of the court to give any requisite instruction. [State v. Taylor, 183 S. W. l. c. 301; State v. Levy, 262 Mo. l. c. 190; State v. Sykes, 248 Mo. l. c. 712; State v. Dockery, 243 Mo. 592; State v. Wellman, 253 Mo. l. c. 316; State v. Chissell, 245 Mo. l. c. 554; State v. Horton, 247 Mo. l. c. 663.] The trial court is to be allowed the last clear chance to correct its own errors, and thereby, perhaps, save the delay and expense of an appeal.

"The above cases and many others which we might cite but follow the analogous statutory rule in civil cases, which requires motions to be specific (Sec. 1841, R. S. 1909) and they accentuate the idea that at some stage of the trial of a criminal case, the defendant is saddled with the duty of taking the trial court measurably into his confidence." [State v. Gifford, 186 S. W. l. c. 1060.]

Such a rule is not beset with hardships to the bar, because instructions are required to be written, and while they are more lengthy in most cases than necessary, they are rarely so lengthy in any case that they may not be read in four days. It is wholly different with the testimony in the case. It is usually voluminous; so that to carry it accurately in memory is impossible; it is rarely transcribed within the four days given by statute within which to file the motion for a new trial. So, in the nature of things there ought to be a difference in the holdings of this court upon the respective points.

Coming to the second point reserved above for discussion (which is, of course, not in this case if there is, as I urge, merit in the one discussed last above), this identical point was up in the case of State v. Evans, 267 Mo. 1. c. 167 (recently before this court In Banc), but it was not therein conclusively ruled. As I stated in my concurring opinion in the Evans case, Division Two of this court and Banc as well, whenever the point reached court In Banc (State v. Barrington, 198 Mo. 23), have consistently ruled for almost forty years, that the giving of the cautionary instruction touching the testimony of defendant and his or her spouse, while sometimes criticised as useless, is not reversible error. [Kelley's Crim. Law & Prac., p. 344; State v. Maguire, 69 Mo. 197 (decided in 1878); State v. Zorn, 71 Mo. 415; State v. Cooper, 71 Mo. 436; State v. McGinnis, 76 Mo. 326; State v. Sanders, 76 Mo. 35; State v. Wisdom, 84 Mo. 1. c. 190; State v. Cook, 84 Mo. 40; State v. Miller, 93 Mo. 263; State v. Brooks, 99 Mo. 137; State v. Brown, 104 Mo. 365; State v. Morrison, 104 Mo. 638; State v. Young, 105 Mo. 634; State v. Mounce, 106 Mo. 226; State v. Ihrig, 106 Mo. 267; State v. Noeninger, 108 Mo. 166; State v. Turner, 110 Mo. 196; State v. Wells, 111 Mo. 533; State v. Renfrow, 111 Mo. 589; State v. Porter, 111 S. W. 529; State v. Maguire, 113 Mo. 670; State v. Fairlamb, 121 Mo. 137; State v. Pratt, 121 Mo. 566; State v. Lingle, 128 Mo. 528; State v. Taylor, 134 Mo. 109; State v. Bryant, 134 Mo. 246; State v. Napper, 141 Mo. 401; State v. Summar, 143 Mo. 220; State v. Fox, 148 Mo. 517; State

v. Miller, 159 Mo. 113; State v. Adair, 160 Mo. 391; State v. Miller, 190 Mo. 449; State v. Dilts, 191 Mo. 665; State v. Maupin, 196 Mo. 164; State v. Barrington, 198 Mo. 23; State v. Brown, 216 Mo. 351; State v. Newcomb, 220 Mo. 54; State v. Boyer, 232 Mo. 267; State v. McDonough, 232 Mo., 219; State v. Mintz, 245 Mo. 1. c. 547; State v. Shaffer, 253 Mo. 320; State v. Hyder, 258 Mo. 225, and many others which industry will uncover.]

If we are, without any qualification, to hold that the giving of the instruction here complained of, is in all cases reversible error, such ruling will serve to reverse almost nine out of ten of all criminal cases pending in this court, as well as practically all of the criminal cases now in the course of appeal here. This is of course no insuperable reason why, if we are wrong, we should not get right; but for the reasons given by Judge HENRY in the case of State v. Maguire, supra, and by Judge GANTT and others in the cases above cited, and by the writer in the case of State v. Shaffer, 253 Mo. 320, and in the concurring opinion in the Evans case, supra, I do not think the making of such a ruling would be to get right, but on the contrary it would be to get wrong after having been right for forty years. This contention presents no new question. It has been urged and argued over and over again. Many of our predecessors upon this bench have dealt with it, examined it, gone into it and into its history, and finally, without an exception, agreed that it is not reversible error, till the qualified ruling in the Evans case, supra. When we consider the history of the matter and the great change wrought by the Act of 1877, conferring upon defendant for the first time the right to testify as a witness for himself, we are able to appreciate that the giving of this cautionary instruction was not when it began an utter heresy in the law.

*Arguendo,* in the Shaffer case, supra, the writer fell into what upon one view might be termed an inaccuracy, in saying that there is no cautionary provision in the statute which confers the right on a party in a civil suit to testify for himself. Much stress is laid upon this fact

in the learned majority opinion in the case of State v. Evans, supra. But aside from the mere reproach which follows inaccuracies of statement, the above error in the Shaffer case cuts no figure whatever. I should have stated that there is no *precisely similar* statute in the civil practice. There is a general statute relative to witnesses which affects this matter; but this statute is different in its history, provisions and even verbiage, in the respects mentioned infra, from the one contained in our Code of Civil Procedure. The general statute affecting this matter in civil cases was passed (*semble*) in 1855. [R. S. 1855, p. 1576, sec. 1.] It did not then, except by somewhat remote inference, provide that the express fact of interest could be shown for the purpose of affecting credibility. [R. S. 1855, p. 1577, sec. 2.] It was not till 1865 that 't assumed its present form and provided, in physical juxtaposition to the according of competency, the present privilege in the triers of fact of diminution cf credibility for interest's sake. [G. S. 1865, p. 586, sec. 1] It *did not then, nor does it now, nor has it ever said one syllable as to the competency of the spouse of a party to testify for him or her at the expense merely of the privilege of diminution of credibility by reason of the marital relation.* Such spouse has never had, except where he or she acted as the agent for the other spouse, and in other specific but limited aspects, the privilege of testifying at all in the wife's or husband's civil case. [Sec. 5359, R. S. 1909.]

But the provision of the criminal practice removing as to the defendant the bar of incompetency as a witness, was not passed till 1877, twenty-two years later. [Laws 1877, p. 356, sec. 1.] It was amended in 1879 (R. S. 1879, sec. 1918) so as *to allow the spouse of the defendant* to testify if he or she chose upon the trial in behalf of such defendant. The *price of this privilege of competency* was from the beginning that of having interest shown in diminution of credibility. Under the provisions of the Criminal Practice Act the bar of incompetency was removed from both defendant and his spouse upon the express condition that the fact of interest in the result by

reason of being the defendant, or the spouse of the defendant, might be shown to affect credibility. In the civil statute there was no such express provision, or price attached as the privilege of competency, till ten years after the right to testify was given. It was *not in fact even then, and has not yet been* (except within the narrow statutory limits set forth, supra), *so granted upon any condition, or price to the spouse in a civil case.*

Notwithstanding those differences in history and verbiage, the instruction upon the weight of the evidence of the spouse, will likewise be stricken down, if the rule suggested in the Evans case be adopted in the criminal practice, along with the similar ·instruction touching the evidence of the defendant. · If one goes, by all rules of reason and decision, the other must go also. If the provision of the. general statutes relative to witnesses, which was passed in 1855, is to be construed in all cases *in pari materia* with the similar provision of the Criminal Practice Act, which was passed in 1877, and ʹamended (so far as the provision in question is concerned) into its present form in 1879, then there was no real need or reason for the enaction of the provision in the Criminal Practice Act at all, and the Legislature in passing it did a vain and futile thing. The provisions of the general statute would have covered the case and at least have made the accused himself competent, without the need of any harsh construction thereof whatever.

. So, for these reasons ;and others to be found in the learned discussions of this much-mooted point, for much more than a third of a century, and to be found in the books by the curious in the cases I cite above, I submit that the fallacy into which the learned writers of the majority opinion in the Evans case and of the concurring opinion herein fell, arises, among other things, from the fact that they fail to correctly note the differences existing between the civil and the criminal practice.

Summing up briefly at the risk of repetition, there is no statute in the civil practice which requires the trial court to instruct on all of the law of the case; there is such a statute in the criminal practice which makes it

obligatory upon the trial court so to instruct. Then since a jury of laymen must get the law from some source, they must either get it in the statute-ordained way, from the court by instructions, or they must carry the Revised Statutes into their jury room. But this reason was dealt with in the Maguire case and in the Shaffer case, and in numerous others, so I need not again belabor it.

Another slight difference is that in civil cases where comment of this kind has, I concede, been held reversible, both parties ordinarily (*always,* either against a party, or his agent, or against a joint tortfeasor) testify for themselves against the adverse party, unless one be dead or insane, in which case the other is wholly disqualified. So, comment in an instruction upon the weight to be given to their testimony, respectively, would ordinarily be not only unavailing, but wholly frivolous and inept. In' a criminal case the accused swears against a dumb entity—the State—which itself cannot testify either in person or by agent. That these latter reasons have no particular weight, unless there exist the differences urged as between the civil and criminal statutes, may be conceded. But if the history, language and context do combine to show a legislative intent in the one case, which is not to be found in the other, these reasons may contribute logically to explain in part the considerations upon which that difference is bottomed.

Much was said by learned counsel for appellant upon argument in an impassioned outburst of oratory, touching the deprivation of a citizen of his liberty; but if that citizen be by the facts shown in the evidence, conclusively proven to be guilty of a most bloody, brutal and inexcusable murder, he ought not to be allowed any fairer trial than many hundreds of others have had who have gone this way before him, and have had applied to them the rule for the abolition of which he now contends.

For the above reasons I most respectfully dissent from the conclusion reached in this case, as well as from the rules upon which that conclusion is bottomed.

*Williams, J.,* concurs in these views.